**GENERAL TIME CORPORATION,**
Plaintiff-Appellant,

v.

**TALLEY INDUSTRIES, INC.,** Franz G. Talley, M. Kimelman & Co., Michael G. Kimelman, Oscar Kimelman, Donald D. Harrington, individually, and as Chairman of the Independent Stockholders' Committee of General Time Corporation and American Investors Fund, Inc., Defendants-Appellees.

**GENERAL TIME CORPORATION,**
Plaintiff-Appellant,

v.

**AMERICAN INVESTORS FUND, INC.,** Talley Industries, Inc., Franz G. Talley, M. Kimelman & Co., Michael G. Kimelman, Oscar Kimelman and Smith Barney & Co., Incorporated, Defendants-Appellees.

Nos. 21/22, Dockets 32299/32300.

United States Court of Appeals
Second Circuit.

Argued Sept. 16, 1968.

Decided Oct. 23, 1968.
Certiorari Denied Jan. 13, 1969.
See 89 S.Ct. 631.

Lawrence Kill, New York City (Chadbourne, Parke, Whiteside & Wolff, Paul G. Pennoyer, Jr., John G. Collins, Jerold Oshinsky, New York City, of counsel), for plaintiff-appellant General Time Corp.

Robert B. Fiske, Jr., New York City (Davis, Polk & Wardwell, Roger L. Zissu, New York City, on brief), for defendant-appellee Smith, Barney & Co., Inc.

Clendon H. Lee, O'Connor & Farber, New York City, for defendant-appellee American Investors Fund, Inc.

Walter L. Stratton, New York City (Donovan, Leisure, Newton & Irvine, Sanford M. Litvack, Benjamin Vinar, Roger W. Kapp, New York City, of counsel), for defendants-appellees Talley Industries, Inc., Franz G. Talley, M. Kimelman & Co., Michael G. Kimelman and Oscar Kimelman.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

These appeals are two more chapters in a controversy arising from the efforts of Talley Industries, Inc. (Industries) to displace the management of General Time Corporation (GTC) and ultimately to acquire or merge with it. We have dealt with other aspects of this in SEC v. Talley Industries, Inc., decided July 31, 1968, 399 F.2d 396, and will assume familiarity with that opinion.

I.

THE ACTION UNDER THE PROXY RULES

As recounted in our earlier opinion, an "Independent Stockholders' Committee" organized by Industries wished to solicit proxies for the election of ten nominees as directors of GTC at its annual meeting on April 22, 1968, but the SEC staff refused clearance unless Industries filed an application for approval of what the staff considered a joint participation for the acquisition of GTC stock by Industries and American Investors Fund, Inc. (Fund) pursuant to Rule 17d–1 under the Investment Company Act of 1940. On March 26 Industries filed such an application, joined in by Fund. The application made a detailed statement of the facts but claimed there was no joint participation within § 17(d) of the Invest-

ment Company Act. Industries immediately gave GTC a copy of this application. The SEC staff then cleared a proxy statement of the Committee, which was issued under date of March 27.

This Proxy Statement made plain, among other things, that two of the nominees for directors of GTC were officers and directors of Industries; that Industries owned 257,937 shares, or approximately 12.2%, of GTC's stock; that Industries and certain of its officers and directors, as well as M. Kimelman & Co. and its partners, intended to solicit proxies; that all expenditures for solicitation would be paid by Industries; that Fund owned 210,000 shares (9.89%) of GTC's stock; and that Fund had filed a Schedule 14B statement with the SEC but had disclaimed any role in proxy solicitation or any arrangement or understanding with respect to the giving or withholding of a proxy. The Statement placed GTC's stockholders on notice that "Talley Industries, Inc. has announced that its present intention is to propose a merger or other combination of General Time Corporation and Talley Industries, Inc." It recited that GTC had brought suit against Industries, Fund and others "alleging violations by the defendants of provisions of the federal securities laws and seeking to enjoin certain actions, including the voting by the defendants of shares of common stock of General Time Corporation owned by them." It related also that Industries had filed an application with the SEC in which Fund had joined "with respect to an alleged joint participation by Talley Industries, Inc.

and the Fund" concerning GTC common stock; that the parties had disclaimed a joint arrangement within the purview of § 17(d) of the Investment Company Act; that they had sought dismissal of the application or, in the alternative, approval of the transaction; and that in the application Industries and certain of its directors "have undertaken that they will consider with the staff of the Securities and Exchange Commission reasonable conditions which may be imposed upon their disposition of General Time Common stock."

■ GTC responded with a second action in the District Court for the Southern District of New York. In this it sought to enjoin the solicitation and use of proxies by the Committee as in violation of Rule 14a–9(a) of Regulation 14 issued under the Securities Exchange Act of 1934.[1] It is common ground that a private action will lie for violation of this Rule, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), that the corporation has standing to bring such an action, Studebaker Corp. v. Gittlin, 360 F.2d 692 (2 Cir. 1966), and that an injunction may issue on a proper showing.

The only criticisms of the Proxy Statement which we deem to require discussion are that it did not adequately disclose the "arrangements" between Industries and Fund, and did not state that Fund owned 9% of Industries' voting shares with the consequence that Industries was an "affiliated person" of Fund under the Investment Company Act.[2]

---

1. Rule 14a–9. False or Misleading Statements.

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to cor-

rect any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

2. GTC's criticism of the appellation "Independent Stockholders' Committee" is captious. The Proxy Statement made clear that the Committee was acting for Industries; its "independence" was only of the management of GTC. With respect to other criticisms we rest on Judge Tyler's discussion.

■ The standard of materiality is somewhat more elusive in relation to statements issued in a contested election than in regard to a prospectus or other representation designed to induce the purchase or sale of securities, or a proxy statement seeking approval of a proposed corporate transaction—the situation in *Borak* and in Alleghany Corp. v. Kirby, 333 F.2d 327, 345–346 (2 Cir. 1964), aff'd by an equally divided court in banc, 340 F.2d 311 (2 Cir. 1965), cert. dismissed as improvidently granted, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966). No one knows just what motivates stockholders in choosing between slates. Those experienced in contested elections are likely to doubt whether proxy statements are read with much precision, and determination of the influence of a particular omission or even misstatement is almost sheer guesswork. The past record of the management, the market performance of the stock, the lustre of the opposition, and the recommendations of brokers and investment advisers based on such considerations, are likely to be much more influential than tired-eye scrutiny of proxy statements. Still, issuers of such statements should be held to fair accuracy even in the hurly-burly of election contests.

■ The test, we suppose, is whether, taking a properly realistic view, there is a substantial likelihood that the misstatement or omission may have led a stockholder to grant a proxy to the solicitor or to withhold one from the other side, whereas in the absence of this he would have taken a contrary course. This latter circumstance—that there is another side—has a bearing on materiality in a case where, as here, the facts have been disclosed to it in ample time for comment. Its failure to correct alleged misstatements or rectify claimed omissions is some evidence that it does not regard them as material—just as a lawyer's failure to object to a jury instruction affords some indication that he did not then regard it as prejudicial, cf. United States v. Kahaner, 317 F.2d 459, 478–479 (2 Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963).

■ We fail to see how the details concerning the discussions between Industries and Fund that were omitted from the proxy statement were "necessary in order to make the statements therein not false or misleading." The Proxy Statement did disclose that something had occurred which the SEC might regard as a joint arrangement although Industries and Fund did not so consider it, and that an application had been filed with the Commission; if any GTC stockholder wanted more detail, he would know where to get it. The claim that GTC stockholders furnished with the facts might have drawn a conclusion of illegality is rather far-fetched, and is further deprived of force by the considerations developed later in this opinion. The failure to mention Fund's 9% ownership of Industries is a shade more troubling since it might be said that recital of this was necessary to overcome an impression of lack of financial relationship between Industries and Fund created by the silence on that score. While the reference to the § 17(d) application would apprise the experts of a financial relationship, most stockholders are not in that category. Conceivably also a statement of Fund's 9% ownership in Industries might have led a stockholder to doubt whether the statement that there were no arrangements or understandings with Fund about the giving of its proxy was the whole truth. But even if we assume all this in GTC's favor, we cannot see any real likelihood that a statement of Fund's interest in Industries would have led stockholders to withhold their proxies from the Committee or to grant them to GTC. Rather a stockholder impressed with the desirability of a change in management of GTC and of its merger with Industries would have been more likely to give a proxy for Industries' slate if he had known that an important mutual fund had enough confidence in Industries to own 9% of its stock and thus presumably would support its efforts. Neither in its letters of March 28 to stockholders

nor in any other communication did GTC make any mention of this omission; the point is apparently deemed more important for litigation than it was for information. Finally, although this makeweight is scarcely needed, we think that, despite Rule 14a–9(b),[3] some force can be given to the SEC's clearance of the Proxy Statement in a case such as this where the omissions were of facts well known to it as a result of the contemporaneous Rule 17d–1 application. See Dunn v. Decca Records, Inc., 120 F.Supp. 1 (S.D.N.Y.1954); Mack v. Mishkin, 172 F.Supp. 885, 888 (S.D.N.Y.1959); Kauder v. United Board & Carton Corp., 199 F.Supp. 420, 423–424 (S.D.N.Y.1961). Contrast J. I. Case Co. v. Borak, supra, 377 U.S. at 432–433, 84 S.Ct. at 1555, 12 L.Ed.2d 423. We thus conclude that Judge Tyler was right in denying GTC's initial application for an injunction.

▆ On April 22, the day of the stockholders' meeting, GTC brought a further application on for hearing. The crux of this was the SEC's decision of April 19 that Industries had entered into a joint arrangement with Fund concerning acquisition of GTC stock for which approval under Rule 17d–1 ought to have been but had not been secured. GTC claimed that "The fact that the joint arrangement was in violation of law was of overwhelming importance and would have materially crippled the appeal" of the Proxy Statement, and that "At the least * * * this Court should adjourn the Annual Meeting, vacate the proxies obtained by defendants and order a resolicitation based on a complete, truthful and accurate disclosure." Judge Tyler denied this application also.

We assume that Rule 14a–9 may be read as authorizing a court to require a further statement and an opportunity to revoke proxies where a proxy statement, correct at the time of its issuance,

has become misleading as a result of subsequent developments, cf. Central Foundry Co. v. Gondelman, 166 F.Supp. 429 (S.D.N.Y.1958), although the words of the Rule are not exactly apt to that end. But this is strong medicine, especially when administered the very day of the stockholders' meeting, and a correspondingly strong showing of materiality is required. We find that lacking here. We need not go so far as to say that if the Committee would have been limited to an abject *peccavimus*, this could not have had significant effect—although even on that hypothesis it is hard to see what interest GTC's stockholders would have had in Industries' violation of a statute designed to protect the stockholders of Fund. But the Committee would not have been so confined. It would have been entitled to say that the SEC's decision was one of first impression, see 399 F.2d at 396; that counsel for Industries believed it to be without warrant in law; and that its legality would be tested in the courts. Nine weeks later the Committee could have reported to the stockholders that a United States District Court had ruled that Industries was right. While we reversed that decision on July 31, our opinion rejected any suggestion of deliberate flouting of the Investment Company Act, and that too could have been stated. Under all these circumstances the SEC's holding of a violation was not sufficiently material to demand a further submission to GTC's stockholders and an adjournment of the annual meeting called for that very day.

## II.

### THE ACTION UNDER § 17(d) OF THE INVESTMENT COMPANY ACT AND RULE 10b–5

As noted in our opinion in SEC v. Talley Industries, Inc., supra, GTC had earlier brought an action in the

---

3. (b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made.

Southern District of New York complaining of the same violation of § 17(d) of the Investment Company Act that was later to constitute the subject of the action by the SEC. The complaint also alleged violation of Rule 10b–5, issued under the Securities Exchange Act of 1934, in that the defendants had purchased GTC stock without disclosing the extent of their associations or their full intentions with respect to merger and the like; stockholders had thereby been induced to part with stock at less than they could ultimately have obtained.[4] Judge Bryan dismissed both portions of the complaint for lack of standing on the part of GTC.

We have no occasion to pass on the correctness of the holding that a company whose shares are being acquired in a transaction for which § 17(d) as implemented by Rule 17d–1 requires SEC approval, lacks standing to complain. The relief sought by GTC paralleled that requested in the SEC's action in which GTC was joined as a defendant. Our ruling on the appeal in that case that the court could not properly require Industries and Fund to withdraw any votes cast at the stockholders' meeting or enjoin any further voting of such shares is binding on GTC as a party; indeed, in that capacity GTC is now seeking Supreme Court review. Moreover, our views about the proper scope of relief would not be different if we recognized GTC as having standing to sue. Compare FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 473–477, 60 S.Ct. 693, 84 L.Ed.2d 869 (1940).

■ Turning to the Rule 10b–5 issue, we would not wish to place our approval on a holding that under no circumstances can an issuer have standing to seek an injunction. There are many practical advantages, well summarized in a note, Private Enforcement under Rule 10b–5: An Injunction for the Corporate Issuer?, 115 U.Pa.L.Rev. 617, 628–29 (1967), in

allowing a corporation in certain cases to enjoin manipulation of its stock, although courts must act both with speed and with caution lest such actions become vehicles for management to thwart purchases in the true interest of the stockholder. While we leave that point open, it may be useful to say that we do not consider Birnbaum v. Newport Steel Corp., 193 F.2d 641 (2 Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), to have ruled out such a suit despite phrases which, if taken out of context, might seem to support such a view. We nevertheless affirm on the ground that the portion of the complaint relating to Rule 10b–5 was subject to dismissal for failure to state a claim on which relief could be granted.

As indicated above, the gist of the complaint under Rule 10b–5 was that defendants went about the acquisition of GTC stock described in our previous opinion, 399 F.2d at 396, without disclosing their association or Industries' plan for a merger whose terms might be more favorable than the price paid for the stock being acquired. We know of no rule of law, applicable at the time, that a purchaser of stock, who was not an "insider" and had no fiduciary relation to a prospective seller, had any obligation to reveal circumstances that might raise a seller's demands and thus abort the sale. See Jennings, Insider Trading in Corporate Securities: A Survey of Hazards and Disclosure Obligations under Rule 10b–5, 62 Nw.U.L.Rev. 809, 815 (1968); Bromberg, Securities Law, Fraud, SEC Rule 10b–5, 119, 123–24, 170 (New Matter) (1968). Indeed, secrecy had long been the hallmark of most stock acquisition programs, at least in their initial stages. The very fact that Congress has recently thought it desirable to pass new legislation amending §§ 13 and 14 of the Securities Exchange Act to require disclosure under certain circumstances, P.L. 90–439, 82 Stat. 454, ap-

---

4. While the complaint also alleged failure by Industries to comply with § 16(a) of the Securities Exchange Act, this point has not been pressed; the record on ap- peal from Judge Tyler's order indicates that Industries filed the appropriate report.

proved July 29, 1968, is an indication that no such obligation previously existed.[5] Cf. Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 544 (2 Cir. 1967). Furthermore, the complaint, filed after the special bid of February 19 and Industries' subsequent stock buying program, did not allege that further purchases were in contemplation, and by that time Industries' intentions had been broadcast.

Affirmed.

HAYS, Circuit Judge (dissenting):

Instead of speculating as my colleagues of the majority do on what kind of information leads readers of proxy statements to decide to act, I would require the inclusion of all information which may be material to such decisions. Surely in the present case the ownership by Fund of 9% of Industries' stock and the determination of the SEC that Industries and Fund were violating Section 17(d) were items of information that the stockholders were entitled to have when their proxies were being sought.

I would also hold that the complaint in the Rule 10b–5 case was sufficient against a motion to dismiss. The purchasers of GTC stock were under a duty to disclose to the sellers the contemplated merger.

---

5. The Chairman of the SEC testified at the Senate hearing on the bill that became the new law that "[t]he Commission is of a view that the legislation here proposed will fill a gap, a rather large gap, in the securities statutes." Hearings on S. 510 before the Senate Comm. on Banking and Currency, 90th Cong., 1st Sess. 15 (1967). In evident agreement the House report on the bill stated that "[a]t present, the law does not even require that [one making a cash tender offer] disclose his identity, the source of his funds, who his associates are, or what he intends to do if he gains control of the corporation," and declared the purpose of the bill to be to remedy the law's "failure to provide adequate disclosure to investors in connection with a cash takeover bid or other acquisitions which may cause a shift in control." H.R.Rep. No. 1711, 90th Cong., 2d Sess. 2, 3 (1968).