**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

v.

**GENERAL TIME CORPORATION, Defendant-Appellant,**

and

**Talley Industries, Inc., American Investors Fund, Inc., and Chestnutt Corporation, Defendants-Appellees.**

**No. 197, Docket 32792.**

United States Court of Appeals Second Circuit.

Argued Nov. 1, 1968.

Decided Nov. 19, 1968.

Certiorari Denied Jan 13, 1969.

See 89 S.Ct. 637.

Paul G. Pennoyer, Jr., New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, Lawrence Kill and Jerold Oshinsky, New York City, of counsel), for appellant.

Walter L. Stratton, New York City (Donovan Leisure Newton & Irvin, New York City, Ben Vinar and Roger W. Kapp, New York City, of counsel), for appellee Talley Industries, Inc.

Clendon H. Lee, New York City (O'Connor & Farber, New York City, Stanley L. Sabel, New York City, of counsel), for appellees American Investors Fund, Inc. and Chestnutt Corp.

Richard V. Bandler, Associate Regional Administrator (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Paul Gonson, Asst. Gen. Counsel, Washington, D. C., Edwin H. Nordlinger, Securities and Exchange Commission, New York City, of counsel), for Securities and Exchange Commission, amicus curiae.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

This is the third and, we hope, the last chapter of litigation in this court concerning the acquisition by Talley Industries, Inc. (Industries) and American Investors Fund, Inc. (Fund) of stock in General Time Corporation (GTC). The earlier ones, Docket Nos. 32506 and 32299/32300, are chronicled in 399 F.2d 396 (2 Cir. 1968) and 403 F.2d 159 (2 Cir. 1968), and we shall assume familiarity with these opinions.

The instant appeal stems from our first decision, 399 F.2d 396, in which we upheld the SEC's position that by acquiring shares of GTC in the winter of 1967–68 and interesting Fund in also purchasing them, Industries had, perhaps unwittingly, violated § 17(d) of the Investment Company Act[1] and the Commission's Rule 17d–1 thereunder.[2] In remanding the case to the District Court for the Southern District of New York for the entry of an appropriate decree, we were at pains to make clear, however, that "our reversal of the judgment dismissing the complaint does not imply any belief on our part that the SEC is entitled to the drastic relief sought," 399 F.2d at 405. This had included a requirement that Industries and Fund withdraw any votes previously cast at the annual meeting of GTC in April 1968, where a slate nominated by a committee formed by Industries had apparently won a contested election, and an injunction against their voting their shares for nominees for directors whose names had been or might be proposed by Industries or for any merger or consolidation of GTC with Industries. We pointed out, 399 F.2d at 405:

"The objective of § 17(d) of the Investment Company Act is to prevent affiliated persons from injuring the interests of stockholders of registered investment companies by causing the company to participate 'on a basis different from or less advantageous than that of such other participant.' On the face of things that has not happened here up to this time, and the objective for a court of equity must be to insure that it does not happen in the future. While we do not undertake to particularize the form of a decree, a prohibition against sale of its shares by Industries without according Fund a fair opportunity to participate would be one obvious device to that end. On the other hand, as at present advised, we fail to perceive how the interest of Fund's stockholders would be advanced by such provisions as requiring Industries and Fund to withdraw votes cast at the April 22 stockholders' meeting of General Time and enjoining further voting by them. Requirements of that sort would have a strong tendency to induce forced liquidation at least on the part of Industries, which surely did not make its large investment in order to be a voteless minority stockholder in General Time, and this might well be detrimental rather than advantageous to the stockholders of Fund. Whether or not General Time had sufficient standing to direct judicial attention to the violation of § 17 (d), an issue on which we have no occasion to pass, protection of the interests of its management in retention in office is not an objective of that section. While an order going beyond what would otherwise be the necessities of the case may sometimes be justified as against a deliberate flouter of regulatory statutes, Industries and Fund cannot be so regarded."

1. This provides:
    (d) It shall be unlawful for any affiliated person of or principal underwriter for a registered investment company (other than a company of the character described in section 80–12(d) (3) (A) and (B) of this title), or any affiliated person of such a person or principal underwriter, acting as principal to effect any transaction in which such registered company, or a company controlled by such registered company, is a joint or a joint and several participant with such person, principal underwriter, or affiliated person, in contravention of such rules and regulations as the Commission may prescribe for the purpose of limiting or preventing participation by such registered or controlled company on a basis different from or less advantageous than that of such other participant.

2. This prohibits transactions within the scope of § 17(d)
    * * * unless an application regarding such joint enterprise, arrangement or profit-sharing plan has been filed with the Commission and has been granted by an order entered prior to the submission of such plan or modification to security holders for approval, or prior to such adoption of modification if not so submitted, * * *

Judge Wyatt proceeded promptly to carry out the task assigned to him. He ascertained that none of the parties except GTC desired to submit any evidence. The SEC had joined GTC as a defendant, although seeking no relief against it other than a temporary restraining order against its reconvening the 1968 annual meeting or giving any effect to the votes cast there until a preliminary injunction was issued. In light of what he considered GTC's limited role in the action, the judge declined to receive evidence from GTC but allowed its counsel to make an extensive offer of proof. After inviting all parties to submit proposed final decrees and supporting briefs, he distributed a proposed decree drawing on these drafts and then held a further hearing where suggestions were received and many were adopted.

The decree entered by the district court begins by providing generally that so long as Industries is an "affiliated person" of Fund as that term is defined in § 2(a) (3) of the Investment Company Act, Industries and Fund are enjoined from effecting any transaction in which Industries acts as principal and Fund is a joint or a joint and several participant with Industries without first having obtained Commission approval. It then says that certain acts are not to be regarded as "transactions" thus enjoined, provided there is no consultation or communication between Industries and Fund concerning them. These include the voting of any GTC shares owned by either; the nomination by Industries of directors for election to the board of GTC and solicitation by Industries of proxies for their election or with respect to any merger, consolidation or sale of assets; the disposition by Fund of any GTC shares owned by it; and the merger or consolidation of

GTC and Industries or the sale of either's assets to the other. The last provision was importantly qualified by a statement that "nothing contained in this judgment affects whatever applications may be required under Section 17(b) of the Act." [3] The decree then proceeds with elaborate provisions designed to insure Fund equal or preferential treatment with respect to any sale of the GTC shares. Industries may not sell GTC shares on the New York Stock Exchange without giving Fund advance notice of three full business days; if Fund desires to sell, Industries must desist from selling for ten business days unless Fund shall sooner have completed its sales or abandoned its selling program. So long as Fund holds any GTC shares, Industries may not sell any of its own otherwise than on the NYSE save (1) as incident to a merger or similar transaction on terms equally available to all GTC shareholders; (2) pursuant to a tender offer from a third person equally available to all GTC shareholders, with Fund to have a preference over Industries if the offer is for a limited number of shares; (3) in any other way that enables Fund to dispose of an equal percentage of its stock "on exactly the same terms and conditions as the disposition by Industries"; or (4) in any other manner approved by the Commission and thereafter by the district court. GTC is directed to reconvene its annual meeting, which had been recessed since April 22, 1968, and to include the votes cast by Industries and Fund in the count. The decree concludes with the usual provision retaining jurisdiction.

The SEC has not appealed from the decree, which broadly sustained its position. GTC has. Its complaint is that the district court did not enter the decree the SEC had proposed. This provided

---

3. So long as Industries is an affiliate of Fund and of GTC, any transaction whereby Industries or GTC acquired the GTC shares owned by Fund would be prohibited by § 17(a) (2) and, if the transaction involved issuance of the purchaser's securities, also by § 17(a)(1), unless the SEC granted an exemption under § 17

(b); this can be done only if the Commission finds, *inter alia*, that "the terms of the proposed transaction, including the consideration to be paid or received, are reasonable and fair and do not involve overreaching on the part of any person concerned."

that "unless and until an application pursuant to Section 17(d) of the Investment Company Act of 1940, 15 U.S.C. 80a–17 (d), and Rule 17d–1 thereunder, 17 CFR 270.17d–1 first has been filed with and has been granted by an order of" the Commission, Industries and Fund not only were enjoined from further acquisitions of stock of GTC but were required to withdraw any votes cast at the 1968 annual meeting, were enjoined from voting shares for nominees proposed by Talley or for merger or other combination of GTC with Talley, and were forbidden to transfer or dispose of any of their GTC shares.[4] In declining to enter the decree proposed by the SEC, the judge stated that while he "would feel obliged" to follow the lead given by this court's opinion, "to the extent that I am permitted to make an independent finding and determination, I have made that finding and determination that no such injunctive relief is appropriate."[5] At our invitation the SEC has submitted a brief as *amicus curiae* explaining why it believes its proposed judgment should have been entered.

■ We stress at the outset that the issue is not whether we would upset or approve the upsetting of an order of the SEC containing the provisions of the decree proposed by it to the district court. Cases such as SEC v. New England Electric System, 390 U.S. 207, 88 S.Ct. 916, 19 L.Ed.2d 1042 (1968), are thus inapposite. The only order the SEC has entered here is one denying the request for a declaration of nonapplicability of § 17(d) to the purchases by Industries and Fund or, in the alternative, for retroactive approval. Instead of making its own order, §§ 38(a), 40, 42 (a), the SEC, doubtless because of exigencies of time, availed itself of the authority conferred by § 42(e) to come into the district court and invoke the court's injunctive powers. When it did this, it submitted itself to judicial concepts of equity. In our first opinion we referred briefly to Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944), decided under a statute whose language was very similar to that of § 42(e) of the Investment Company Act. The entire passage from Mr. Justice Douglas' opinion merits quotation:

> "We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. City of Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 88 L.Ed. 9, 11. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between *competing private claims*."

It is said, however, that this case is different. The issue in Hecht Co. v. Bowles was whether past violations required an injunction against future ones that might or might not occur, and the case raised no problem of the relation between court and agency. Here, it is argued, the district court has refused to enjoin a violation that is right under its eyes, namely, the voting of the GTC stock acquired by Industries and Fund. Such voting, it is contended, does not cease to

---

4. Our summaries both of the court's judgment and of the SEC's proposed judgment are abbreviated and omit numerous provisions not central to the dispute.

5. The decree the SEC submitted to Judge Wyatt differed from the prayer of its complaint in being wholly conditioned by inclusion of the "unless and until" clause quoted in the text. Contrast 399 F.2d at 401.

be a part of a "transaction" in which Fund is "a joint or a joint and several participant" with Industries simply because there is no further consultation or communication between them. The argument continues that if a proper application had been made under Rule 17d-1, the SEC might have approved the acquisition of the shares but have required a further application before allowing them to be voted—although it is hard to understand why any business man would buy stock under such a threat of administrative sterilization and equally hard to perceive how the Commission could find that voting by an affiliate and an investment company under democratic election rules would amount to participation by the investment company "on a basis different from or less advantageous than" the affiliate. Again, while the conditions developed by the district court with respect to sale—some of them suggested by the SEC—appear admirably designed to achieve the statutory objective, it is contended that the devising of such conditions was the job of the SEC and not of the district judge.

■ Mere statement makes it plain that the arguments are more concerned with the adjective question—by no means an unimportant one—of the proper relation of court and agency in the enforcement of the Investment Company Act than with the substantive objective of protecting the security holders of ·Fund, to which § 17(d) is addressed. The practical point—and this, of course, is what the fighting is all about—is that, as we read the decree submitted by the SEC, Industries and Fund would have been obliged forthwith to withdraw the votes cast by them at GTC's 1968 annual meeting. This would have assured continuation of the incumbents' control until

the spring of 1969, and if the Commission were to deny the application—perhaps, as intimated in its brief, on the ground of "the previous violation of the Act"—or if there were to be the delays not uncommon in the process of administrative decision and judicial review, for still another year, with the not unlikely prospect that Industries would tire of the game. We think it questionable whether such a result in this case of innocent violation of § 17(d) would be consistent with "the qualities of mercy and practicality" that "have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs," of which the Supreme Court spoke. We are not required, however, to determine whether or not we would sustain these arguments, or some of them, if they were made on an appeal by the SEC. The agency has not appealed,[6] and we conclude that GTC lacks standing to make them.

■ We fully recognize the principle, affirmed in J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L. Ed.2d 423 (1964), that private enforcement "provides a necessary supplement to Commission action," to effect compliance with securities legislation. Indeed, we were the first court of appeals to uphold private actions to enforce duties created by the Investment Company Act. Brown v. Bullock, 294 F.2d 415 (2 Cir. 1961); cf. Schwartz v. Eaton, 264 F.2d 195, 198 (2 Cir. 1959). But this does not mean that any person may sue. When § 44 of the Investment Company Act vested the district court with "jurisdiction of violations of this title or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability

---

6. It states in its *amicus* brief that its decision not to appeal rested on its approval of much of the decree "as a substantive matter," on "its concurrence in this Court's construction of the phrase 'joint or a joint and several participant,'" and on "pressing priorities weighed against the Commission's limited manpower." At argument its coun-

sel indicated that its chief concern in filing an *amicus* brief was to avoid the establishment of an unfortunate precedent. Our decision is limited to the special circumstances of this case—an excusable violation of § 17(d) based on what we considered to be an overly literal although not unnatural reading of its words.

or duty created by, or to enjoin any violation of, this title or the rules, regulations, or orders thereunder," Congress necessarily assumed that the court's jurisdiction would be invoked by someone showing an injury of the sort the Act meant to prevent, and GTC has not done this.

A case directly in point is Greater Iowa Corp. v. McLendon, 378 F.2d 783, 792–794 (8 Cir. 1967), where the court held that a corporation lacked standing to complain of acquisition of its stock by what was assumed to be an unregistered investment company. Like Judge Gibson there, "we see no basis under this [the Investment Company] Act that the issuer company can oversee the trading of its securities or object to the method in which its shares are acquired or the persons who acquire them." In General Time Corp. v. American Investors Fund, Inc., 283 F.Supp. 400 (S.D. N.Y.1968), Judge Bryan concluded that GTC lacked standing to complain of the transaction here at issue since Congress intended the protection of the Investment Company Act "to be for the benefit of persons having an interest in those companies" and not of corporations whose securities were being acquired. While on the appeal from that judgment we did not decide that question, 403 F.2d 159, 164, we believe the district court's view was sound—indeed, we now think our decision would better have been placed upon that ground, see fn. 7. Even if this court should ultimately uphold the standing of a corporation to seek an injunction against dealings in its securities violating provisions of the securities laws designed to protect its own security holders, a question we left open in 403 F.2d at 164, this would not mean that an issuer has standing to espouse the cause of stockholders of a stockholder endangered by the violation of a statute framed to meet their special needs.

To allow a company whose shares were being acquired by an affiliate and an investment company without the prior approval required by § 17(d) and Rule 17d–1 to act as a "private attorney general" to enforce the Investment Company Act, see Associated Industries v. Ickes, 134 F.2d 694, 704 (2 Cir.), vacated as moot, 320 U.S. 707, 64 S.Ct. (1943), would stretch that doctrine well beyond the bounds limned by its author. Apart from the fact that there, as in FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), and Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), the courts were construing the phrase "person aggrieved" in statutes allowing review or administrative action, see 134 F.2d at 701–712, Judge Frank proceeded on the basis that the petitioner, a buyer of coal whose price the Bituminous Coal Commission had fixed, was "threatened with financial loss by a Commission's order, which fixed prices and prevents competition among those from whom the consumer purchases," 134 F.2d at 705, and thus was within the very class the statute aimed to protect. See Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 613–17 (1968). The only argument made to show how GTC may suffer financial loss from the acquisition of its stock by Industries and Fund in an unapproved joint transaction forbidden by Rule 17d–1, was that GTC might obtain a higher price in a merger or other combination if the prospective partner were not already in control. Apart from the facts that GTC here declined to discuss a merger with Industries before the 1968 annual meeting and then negotiated one with another company on unattractive terms, see 399 F.2d at 400–01, § 17(d) does not aim to prevent an affiliate and an investment company from jointly acquiring control of another company *simpliciter;* it seeks only to prevent their doing this on a basis wherein the investment company fares worse than the affiliate. In short, even if we were to assume a possibility of loss to GTC from the transaction accomplished by Industries and Fund, this would not constitute the injury to holders of investment company securities that § 17(d) sought to prevent. GTC has not been vested with the role of guardian either of the shareholders of Fund or of

the integrity of the administrative process.

■ We do not believe matters should stand any differently because in this case GTC was named as defendant in the SEC's action. The only relief the SEC sought against it was a temporary restraining order against reconvening the annual meeting pending the issuance of an injunction, and this has now been denied. While the decree does direct GTC to proceed with the long-delayed meeting, that is only what the law would require in any event once the SEC's prayer for an injunction against this was denied. While the SEC could appeal from the denial of the relief sought against GTC, the latter cannot. When we look behind form to substance, GTC is endeavoring on this appeal to vault from its position as a nominal defendant to that of a plaintiff and to take over a role which the true plaintiff, the SEC, has abandoned. Its lack of standing to complain of a violation of § 17(d) is as fatal on appeal as if it had brought an independent suit.[7]

Since GTC has indicated that in the event of an adverse decision it will endeavor to carry the matter further, we think it best to decide the question of continuing the injunction *pendente lite* against the reconvening of the 1968 annual meeting that, in one way or another, now has been in effect for more than half the term for which the directors were elected. Counsel for Industries suggested at the argument that if we were unwilling to dissolve the injunction at that time, we should lift it to the extent of allowing the inspectors of election to report and any other normal business to be completed, with the proviso that if the persons declared to be elected as directors were other than the incumbents, the new directors would be enjoined from assuming office until our decision on this appeal. This, it was said, would have the advantage of enabling the parties to determine promptly whether they wished to indulge in a further round of litigation concerning the validity of proxies under state law rather than deferring such a decision until the Supreme Court acts on GTC's petitions for certiorari to review our decisions in Nos. 32506 and 32299 [8] and the petition GTC announced its intention to file from our decision here if this should be against it. While we deferred acting on Industries' request pending decision, we think it proper that the injunction against reconvening the annual meeting be partially lifted, on the terms proposed by Industries, on a date ten days after the filing of this opinion. If within twenty days after the filing of this opinion GTC files a petition for certiorari to review this judgment, the injunction against the assuming of office by any directors other than the incumbents shall continue until final determination by the Supreme Court in all these cases where GTC has sought certiorari; if it should not, the injunction will be fully lifted. In view of this disposition, GTC's application for a stay pending final determination by the Supreme Court on the petition for certiorari in Docket No. 32299 is denied. The parties may submit proposed orders if they desire.

Judgment affirmed.

7. To the extent that our opinion in 403 F.2d at 164, may imply that GTC has standing to seek review of the scope of relief granted the SEC, we withdraw this.

8. GTC informed us that it did not intend to seek certiorari from our affirmance of Judge Bryan's decision in No. 32300.