BUTLER AVIATION INTERNATIONAL, INC., Plaintiff,

v.

COMPREHENSIVE DESIGNERS, INC., Winston, Perry & Co., Inc., NGC Capital Management, Inc., successor to Wygod, Weis, Florin, Inc., Walter R. Garrison, and Anthony M. Waltrich, Defendants.

No. 69 Civ. 5158.

United States District Court
S. D. New York.

Dec. 24, 1969.

**912**

Lord, Day & Lord, by John W. Castles 3d, Roger C. Ravel, Franklin B. Velie and Eugene F. Bannigan, New York City, for plaintiff.

Mudge, Rose, Guthrie & Alexander, by Donald J. Zoeller, William P. Ford, New York City, for defendants.

CANNELLA, District Judge.

Plaintiff moves pursuant to Rule 65 (a) of the Federal Rules of Civil Procedure for a preliminary injunction against the defendant Comprehensive Designers, Inc. [hereinafter "CDI"],[1] enjoining CDI from directly or indirectly exchanging its securities for Butler Aviation International, Inc. [hereinafter "Butler"] securities or from consummating or taking any steps to consummate CDI's presently outstanding tender offer. Plaintiff also moves for leave of this court to serve and file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The motions are granted.

This court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa.

Plaintiff in its original complaint, filed November 21, 1969, alleged various violations by the defendants of the Securities and Exchange Act of 1934, specifically Sections 9, 10 and 13. It also alleged violations by the defendants of Rule 10b-5, 10b-6 and 13d-1, and Regulation 13D promulgated by the Securities and Exchange Commission under authority of the Act; and Section 11 of the Securities Act of 1933. In its proposed amended complaint, plaintiff seeks to add an alleged violation of Section 14 of the Securities and Exchange Act of 1934 and Rule 14e promulgated by the SEC thereunder. Rule 15(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." This court finds that justice requires that the amendment requested herein be granted.[2] Defendants shall answer the amended complaint within ten days of its service upon them.

The facts surrounding this litigation are to a large degree undisputed. A hearing was conducted by this court on December 18 and 19, 1969. The court heard testimony of CDI's President and Treasurer, Walter R. Garrison, along with the introduction by both parties of numerous exhibits and depositions. CDI is a Pennsylvania corporation, the stock of which is listed and traded on the American Stock Exchange. Butler is a Delaware corporation, the stock of which is also listed and traded on the American Stock Exchange. CDI, whose business involves supplying scientific and engineering services to the Government and industry, experienced a rise in its earnings for the fiscal years 1966–67,[3] but in fiscal year 1968 its earnings started to decline. Partly to compensate for this decline, CDI thereafter acquired several companies to broaden its base and to lessen its reliance on government-funded programs. At an annual meeting

1. Only an injunction against CDI is sought at this time and not one against the other defendants in this action. Hearing Minutes, pp. 20, 134.

2. The major controversy briefed and argued by the parties herein centered on the preliminary injunction motion and not the motion to amend. In view of the court's disposition of the injunction motion, it is clear that granting of the motion to amend is also required.

3. CDI's fiscal years are April 30 to April 30 of the following year.

of stockholders held on September 17, 1968, Mr. Garrison, when pressed by several stockholders, stated with what he terms "numerous hedges," that CDI could expect last quarter earnings in fiscal 1969 to approach 20 cents per share, and the earnings for the year could thus be brought to about 60 cents per share. Actual earnings were subsequently only 33 cents per share. He has described this as a "guesstimate."[4] A press release subsequently issued stated these figures without any qualifications. Although Garrison states that he called the proper persons to complain about the release, no steps were taken with regard to qualifying it or to otherwise make it clearer to the investing public or shareholders, even though Garrison knew or should have known that stockholders and investors relied on such earnings reports and predictions.[5] In fact, the second quarter earnings report tended to reinforce the statement.[6] In February, 1969, CDI acquired, via an exchange of stock, Laminated Materials Corporation [hereinafter "Laminated"] on a pooling of interest basis. The fiscal year 1969 ended on April 30, 1969. However, prior to that, in February, 1969, CDI had decided to acquire some 25,000 shares of Butler at a cost of over $700,000.00 for either acquisition or investment purposes. In March, 1969, CDI reported its third quarter earnings,[7] stating that they reflect "continued improvement over preceding quarters," when, in truth, it was a decline from the second quarter.[8]

CDI's accountants, Peat, Marwick, Mitchell & Co., submitted the results of their audit for fiscal 1969 on August 4, 1969. To the surprise of CDI's management, the audit showed a decrease in the net earnings for the fourth quarter and a decline in net earnings for the second year in a row. Feeling that the company should show an increase in its net earnings, at least in the fourth quarter and to the present, as Mr. Garrison put it, a "true economic indication of the performance"[9] of the company, a study was conducted. The results of this study, reported in a memorandum from Mr. Hoechst, a CDI Vice President, to Mr. Garrison,[10] led to a change in CDI's previous accounting procedures. The year-end adjustments, previously all applied to the fourth quarter, were reallocated to the previous three quarters, thus resulting in a showing of increased earnings for the fourth quarter fiscal 1969. The major portion of the reallocation represented an adjustment of the pooling of Laminated, but other significant adjustments were also made which had the same effect of increasing the fourth quarter's profitability. None of these changes in accounting practices, or their effects, were contained in the 1969 Annual Report of CDI.[11] However, a statement, in the form of a President's message was made in the Annual Report that "[t]he last quarter of the fiscal year ended April 30, 1969 reflected continued improvement in results of operation of CDI" and "your Company was able to increase its earnings steadily throughout the year with each quarter demonstrating increases over the preceding quarter."[12] This information was also released to the press.

On September 24, 1969, CDI filed a registration statement with the SEC concerning its tender offer for Butler securities.[13] On November 19, 1969, CDI's tender offer became effective and sought to acquire 51% or more of Butler's se-

4. Hearing Minutes, p. 37.

5. See, e. g., S E C v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968).

6. Exhibits 8 and 9 (press release issued on December 11, 1968).

7. Exhibit 11; Exhibit 10 (press release issued in March, 1969).

8. Compare exhibits 8 and 9 with exhibits 10 and 11.

9. Hearing Minutes, p. 25.

10. Exhibit 15 (dated August 21, 1969).

11. Exhibit 4 (dated August 20, 1969).

12. Id. at p. 1.

13. Exhibit 1.

curities. The offer was to expire on December 5, 1969, but it has been extended three times and is presently set to expire on December 30, 1969. CDI has until January 12, 1970 to accept any tendered shares under the terms of the tender offer.

What we are dealing with in this case is not a single misrepresentation of a company's earnings, but a series of misrepresentations. It was clearly represented to the investing public that CDI was a growing and thriving company in contradiction of the fact that it had suffered a severe earnings' decline in the last years. The effect of this was to "push up" or "inflate" the market price per share of CDI from a low of $15.00 at the time of the September 17, 1968 press release to a high of $35.00 by May 1969. This was, of course, highly desirable and necessary in order for CDI to successfully consummate any acquisition or tender offer for Butler. As to the September 17, 1968 press release, even Mr. Garrison himself admits that there was improper representation of the company's earnings, to a great extent. Furthermore, the representation of CDI's earnings' trend in the third quarter fiscal 1969 report was patently false and misleading. Added to this is the fact that, as a result of reallocations and adjustments, CDI presented to its stockholders and the investing public a materially false picture of its fiscal 1969 earnings, especially for the fourth quarter, without informing them of its change in accounting procedure. Such a course of conduct has been specifically discouraged by the SEC. See, Securities Act of 1934 Release No. 4910 (June 18, 1968). After a consideration of these facts and all the other facts and evidence produced at the hearing, it is clear to this court that CDI has followed a course of conduct which artificially inflated the market price of its stock.

■ The misrepresentations with regard to earnings were clearly misrep-

resentations of material facts. "[M]aterial facts include not only information disclosing the earnings and distributions of a company but also those facts which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities." SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968). The defendants have pointed out that Mr. Garrison may have acted in good faith. However, "proof of a specific intent to defraud is unnecessary." Id. at 854. Furthermore, it is not required under Rule 10b–5 that plaintiff be a buyer or seller of stock as those terms are normally understood. The phrase "in connection with the purchase or sale of any security" was intended by Congress to mean only "that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities." Id. at 860. See Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir., Dec. 10, 1969). Thus, this court finds that there is a great likelihood of success on the part of the plaintiff in proving a violation of Rule 10b–5, as well as, Sections 9 and 10 of the Act of 1934.

■ It is also clear to this court that plaintiff has established a great likelihood of success in establishing a violation of Section 14(e) [14] by the defendant CDI. Plaintiff has established that CDI performed fraudulent or manipulative acts in connection with its tender offer. The course of conduct followed by CDI was such that it inflated the market price of CDI and thereby made their tender offer for Butler securities more attractive to holders of Butler securities. CDI's conduct also indicates that they had been considering a tender offer or acquisition of Butler for some time and had indeed taken steps toward consummation of it during the period of their misrepresentations.[15]

14. 15 U.S.C. § 78n(e).

15. The court refers specifically here to CDI's purchase of 25,000 shares of Butler

The misrepresentations of CDI were material ones and such that a reasonable investor would be likely to rely upon them in making an investment decision. See SEC v. Texas Gulf Sulphur Co., 401 F.2d at 849; List v. Fashion Park, Inc., 340 F.2d 457, 462, 22 A.L.R.3d 782 (2d Cir. 1965). Plaintiff is also the proper party here to assert the violation of Section 14(e). See Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 946–947 (2d Cir. 1969); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969). 1969).

In considering a motion for a preliminary injunction, this court must determine the likelihood of success on the part of the plaintiff, the irreparable harm that will be caused to the plaintiff should an injunction not be granted and the hardship on both parties to the action. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953); SEC v. Great American Industries, Inc., 407 F.2d 453 (2d Cir. 1968); Packard Instrument Co. v. ANS, Inc., 416 F.2d 943 (2d Cir. 1969). The foregoing has already shown that this court has determined that plaintiff has a great likelihood of success. The irreparable harm which is present here is readily apparent. Those persons tendering shares to CDI which are accepted will have committed an irrevocable act from which they will have little, if any, relief. The consummation of the tender offer, if not enjoined, would seriously disrupt Butler's business, management and personnel, and further allow CDI to reap the fruits of its misrepresentation. In addition, the

hardship on the plaintiff is also very clear. Additionally, this is the proper time to grant appropriate relief in these tender offer situations. Judge Friendly of the Second Circuit has stated that "district judges would do well to ponder whether, if a violation has been sufficiently proved on an application for a temporary injunction, the opportunity for doing equity is not considerably better then than it will be later on." Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947 (2d Cir. 1969).

Accordingly, this court, after a consideration of all the evidence presented at the hearing, grants the plaintiff's motion for a preliminary injunction enjoining the defendant CDI, during the pendency of this action, from directly or indirectly exchanging CDI securities for Butler securities or from consummating or effecting or taking any steps to consummate or effect CDI's presently outstanding tender offer to exchange CDI securities for Butler securities. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the plaintiff is required to give security in the sum of *$50,000.00*.[16]

Plaintiff's motion to serve and file an amended complaint in the form annexed to its moving papers is also granted. Defendants shall answer the amended complaint within ten days of its service upon them, in accordance with Rule 15(a).

As to the preliminary injunction the parties shall submit an appropriate order.

So ordered.

---

in early 1969; CDI's admitted interest in acquiring Butler, (Hearing Minutes, p. 93); and CDI's preparations toward extending a tender offer, in addition to other facts.

16. The parties have agreed that this sum is a reasonable one.