425 F.2d 842
 BUTLER AVIATION INTERNATIONAL, INC. and Paul S. Dopp, individually and on behalf of all of the stockholders of Butler Aviation International, Inc., Plaintiffs-Appellees,
v.
COMPREHENSIVE DESIGNERS, INC., Defendant-Appellant, and
Winston, Perry & Co., Inc., N G C Capital Management, Inc., successor to Wygod, Weis, Florin, Inc., Walter R. Garrison and Anthony M. Waltrich, Defendants.
 No. 510.
 Docket 34387.
 United States Court of Appeals Second Circuit.
 Argued January 6, 1970.
 Decided January 8, 1970.
 
 John W. Castles, III, New York City (Lord, Day & Lord, New York, N. Y., Roger C. Ravel, Franklin B. Velie and Eugene F. Bannigan, New York, N. Y., of counsel), for plaintiffs-appellees.
 Donald J. Zoeller, New York City (Mudge, Rose, Guthrie & Alexander, New York, N. Y., William P. Ford, New York, N. Y., of counsel), for defendant-appellant.
 Before LUMBARD, Chief Judge, and FRIENDLY, Circuit Judge, and JUDD, District Judge.*
 FRIENDLY, Circuit Judge:
 
 
 1
 On this expedited appeal, Comprehensive Designers, Inc. (CDI) asks us to reverse a preliminary injunction issued by the District Court for the Southern District of New York in an action brought on November 21, 1969, by Butler Aviation International, Inc. (Butler), the target of an exchange offer by CDI, and joined by Butler's president, individually and on behalf of all of Butler's stockholders. Plaintiffs claimed, among other things, that CDI had violated § 14(e) of the Securities Exchange Act and the SEC's Rule 10b-5 under said Act. The court conducted a hearing on December 18 and 19. Acting with the speed required in light of the expiration date of the exchange offer, January 12, 1970, Judge Cannella, in an opinion dated December 24, 1969, found that Butler had established a great likelihood of success on the claims that CDI had misrepresented its earnings and had thereby violated the statute and rule above cited, and that consummation of the exchange offer would work irreparable damage to Butler and stockholders who had accepted the offer. Referring to our suggestion in Electronic Specialty Co. v. International Controls Corp., 2 Cir., 409 F.2d 937, 947 (1969), that where a plaintiff has made a case for relief, this should normally be granted before rather than after consummation of an exchange offer, he issued a preliminary injunction against CDI's declaring the exchange offer effective or taking any steps to consummate it.
 
 
 2
 We think the evidence warranted the district court in censuring CDI at least for the following:[1] (1) the issuance of a press release which reported its president as having forecast earnings of 60¢ per share for the fiscal year ending April 30, 1969, and earnings of 20¢ per share for the last quarter of that year, at the stockholders' meeting held on September 17, 1968, when in fact he had said merely that such earnings "could be conceivable" if certain favorable developments occurred; (2) CDI's failure to attempt to correct the release despite recognition of its inaccuracy; (3) CDI's issuance of a press release on December 11, 1968, reporting second quarter earnings which were said to reinforce its "confidence in previously projected improvement during the third and fourth quarters of the fiscal year and the balance of the calendar year 1969," a statement that could have been taken as confirming the exaggerated press release of September 17, 1968; (4) CDI's statement of its nine months results, issued in March 1969, reporting that the results of the third quarter of fiscal 1969 "reflect continued improvement over the preceding quarters," when, on what CDI now claims to be the correct facts (although these may not have been known to it at the time), there was no improvement over the second quarter; and (5) a portion of the letter to stockholders in the annual report issued around August 20, 1969, after CDI had begun to consider an exchange offer for Butler, which referred to an improvement in earnings in the last quarter of the fiscal year ended April 30, 1969, over the results recorded in the preceding quarter, when in fact the only justification then known to CDI for reporting an improvement was an undisclosed change from the company's previous accounting practice of reflecting all year-end adjustments in the last quarter.[2]
 
 
 3
 What is much more dubious is the effect of these delinquencies on the recipients of the exchange offer, made by CDI on November 19, 1969, on the basis of a full prospectus on file with the SEC. We are not required to pass in detail upon the parties' exhaustive arguments, based upon analysis of market behavior in the weeks ensuing after the various misstatements, that these did or did not affect the market price of CDI at those times.[3] Simply as a matter of common sense it seems apparent that any significant effect of the first four misstatements on the market price would have been largely dissipated by the annual report for fiscal 1969 issued on August 20, showing earnings of only 33¢ per share as against the 52¢ (or 54¢ with poolings included) earned in fiscal 1968 and the 60¢ mentioned in the press release of September 17, 1968. This was three months before the making of the exchange offer and nearly five months before the date now set for expiration. There was a shorter interval after the announcement that the earnings for the quarter ending April 30, 1969 were higher than those for the quarter ending January 31, 1969, but this statement was not repeated in the prospectus, where the exchange offer was set forth in a document of 68 pages, plus 34 pages of appendices. Plaintiffs have not pointed to any error in the prospectus except for their claim that the quarterly ranges of market prices for CDI stock therein set forth were affected by the misrepresentations described above. It may be added that, except for the press release of September 17, 1968, the misstatements related to rather minor amounts. If CDI had been content to leave the figures for the fourth quarter of fiscal 1969 unadjusted, the result would simply have been to show a decline from the third quarter of $40,000 in earnings or 2¢ a share, rather than an increase of roughly the same amount. While we thus think the picture painted by the district judge was rather exaggerated, still there were misstatements, the last being on a material matter while a tender offer for Butler was under consideration by CDI, and a company intent on an acquisition program, as CDI admittedly was, must be peculiarly alert to avoid these.
 
 
 4
 We remarked in Electronic Specialty Co. v. International Controls Corp., supra, 409 F.2d at 947, that the court has a variety of tools available to do equity at the stage of the temporary injunction. In using them, it is important both to protect stockholders against deceptive exchange offers and not to frustrate the desires of those who wish to exchange when all the facts are known. Approximately 360,000 shares of Butler, out of a total of 1,150,000, have already been tendered — at least some of these by sophisticated investors who tendered with full knowledge of Butler's claims. While courts should rigorously enforce the policy of honesty and fair dealing prescribed by federal securities legislation, they must guard against the risk that, at the instance of incumbent management, they may be frustrating informed stockholders from doing what the latter want. It is to be noted also that, as so often happens in such cases, see 409 F.2d at 948, and n. 7, Butler's management had likewise not been without sin in making overly optimistic earnings predictions.
 
 
 5
 If we had been in the place of the district judge, we would thus have explored whether all proper interests of Butler's stockholders could not have been safeguarded by a procedure such as was followed in the Electronic Specialty case, namely, to require CDI to inform them of what had been developed and give those who had tendered an adequate opportunity to withdraw in the twenty days still remaining before the exchange offer had to be declared effective. Although CDI made no such proposal to the district judge, we suggested at the argument that, in the interest of justice, we would be willing to consider whether, if we found an injunction to be warranted, it should not be modified along these lines. However, after consideration, CDI's counsel have informed us that the period now remaining before January 12, 1970, is too short to permit such a procedure to be accomplished.
 
 
 6
 We thus must choose between the two polar positions of outright affirmance or reversal. While, for the reasons indicated, the choice is not an easy one, we cannot conscientiously allow CDI to escape unscathed from the consequence of inaccurate statements which it could easily have avoided and which may have had some tendency to affect the decision of Butler stockholders with respect to the exchange offer. If CDI wishes to renew its offer on full disclosure, it is free to do so.
 
 
 7
 The judgment is affirmed, without costs. The mandate shall issue forthwith.
 
 
 
 Notes:
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Judge Cannella found that plaintiffs had standing under both § 14(e) and Rule 10b-5. Inasmuch as we agree that standing exists under § 14(e), at least as to the misstatements in the annual report, see Electronic Specialty Co. v. International Controls Corp.,supra, 409 F.2d at 944-946, we need not pass on standing under Rule 10b-5. But cf. General Time Corp. v. Talley Industries, Inc., 403 F.2d 159, 164 (2 Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797-798 (2 Cir. Dec. 10, 1969).
 
 
 [2]
 CDI sought to counter this with a study, prepared after issuance of the Annual Report, showing an improvement in fourth over third quarter income by reallocating among quarters the earnings of Laminated Materials Corporation, which it had acquired on a pooling-of-interest basis, in a manner claimed to reflect the facts more accurately. Apart from other criticisms by Butler, this reallocation, like that of the year-end adjustments, had the result of increasing fourth quarter earnings by decreasing those already reported for other quarters — a fact hardly conveyed by the letter to stockholders, although a careful reader comparing the annual report with the nine-months' figures could have determined that there was a discrepancy somewhere
 
 
 [3]
 The district court seems to have been in rather clear error in thinking the press release played a part in inflating the market price of CDI shares "from a low of $15.00 at the time of the September 17, 1968 press release to a high of $35.00 by May, 1969." The stock was selling around $18.00 at the time of the statement and fell to a low of $14.75 in mid-November. It ended the year around $21.00, achieved a high of $35.00 on May 22, and then gradually declined to around $25.00 at the date of issuance of the annual report in late August, 1969. The report does not seem to have significantly affected the price of the stock, which varied between $23.00 and $26.00 until the date of the making of the exchange offer. Since then, it has declined to around $15.00