**Alexander KAHAN, on behalf of himself and all others similarly situated, Appellant,**

v.

**Lewis ROSENSTIEL et al.**

**No. 18120.**

United States Court of Appeals, Third Circuit.

Argued Dec. 19, 1969.

Decided Feb. 20, 1970.

On Rehearing March 20, 1970.

Certiorari Denied June 8, 1970.

See 90 S.Ct. 1870.

---

13. The Attorney General did not move to have the writ returnable to another court in any of these cases.

Bruce W. Kauffman, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa. (Prickett, Ward, Burt & Sanders, Wilmington, Del., Alexander Kahan, New York City, David Pittinsky, Philadelphia, Pa., William Prickett, Rodman Ward, Jr., Wilmington, Del., on the brief), for appellant.

S. Samuel Arsht, Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Strasser, Spiegelberg, Fried & Frank, New York City, Rubin, Wachtel, Baum & Levin, New York City, Walter K. Stapleton, Wilmington, Del., on the brief), for Glen Alden Corporation and Meshulam Riklis, appellees.

Richard F. Corroon, Potter, Anderson & Coroon, Wilmington, Del., on the brief, for appellees Dorothy H. and Lewis Rosenstiel Foundation and others.

Before McLAUGHLIN, FREEDMAN, and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from the order of the District Court for the District of Delaware dismissing the petition of plaintiff, Alexander Kahan, for counsel fees and expenses arising out of his individual and representative actions against defendants for violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5[1] promulgated thereunder and for a breach of defendants' common law fiduciary duties. These suits were based on alleged misrepresentations, manipulations and nondisclosures in connection with a tender offer. Although the underlying suit which generated the bulk of the legal ex-

---

1. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.

penses has been rendered moot by the action of certain of the defendants, plaintiff contends that his efforts in instituting legal proceedings against the defendants benefited the class he represented and deterred the defendants' "fraudulent scheme".

The District Court dismissed plaintiff's petition for counsel fees on the grounds that: plaintiff had not filed a meritorious damage action which could survive a motion to dismiss, because he was not a purchaser or seller and because he failed to allege reliance on the deception; plaintiff failed to establish a proper class action, or benefit to the class; and plaintiff sought counsel fees from the defendants rather than from a fund created by his efforts. [Kahan v. Rosenstiel, 300 F.Supp. 447 (D.Del. 1969)]

■ Because the District Court disposed of the matter on a motion to dismiss, the facts alleged in plaintiff's petition for counsel fees and his amended complaint in the underlying suit must be accepted as true. See e. g. Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172, 175, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Frank Mashuda Co. v. Allegheny County, 256 F.2d 241, 242 (3d Cir. 1958), aff'd 360 U.S. 185, 79 S.Ct. 1060, 3 L. Ed.2d 1163; 2J Moore Federal Practice ¶ 12.08 (2d ed.1966). The essential allegations are as follows:

Plaintiff is a minority shareholder (owner of 750 shares) in Schenley Industries, a Delaware corporation. Defendants, in this proceeding and in the underlying suit, are the directors of Schenley at the time of the transaction alleged, including Lewis S. Rosenstiel, the controlling shareholder, the Dorothy H. & Lewis S. Rosenstiel Foundations, alleged to be dominated and controlled by Rosenstiel and to be his "alter ego", Glen Alden Corporation, the tender offeror, and Meshulam Riklis, the controlling shareholder of Glen Alden.

In March 1967, Schenley and P. Lorillard Company were engaged in nego-

tiations for a merger between the two companies. As a condition of the merger Rosenstiel, Schenley's chairman and chief executive officer, demanded a premium for his stock and the stock he controlled. Because Lorillard refused to pay the premium, negotiations terminated with Lorillard, and commenced with Glen Alden which was willing to meet Rosenstiel's terms. In March, 1968, as a result of these talks and as part of a plan by Glen Alden to acquire control of or merge with Schenley, Rosenstiel sold 945,126 shares of Schenley common stock to Glen Alden for $80 per share, making Glen Alden the controlling shareholder of Schenley. This occurred although Lorillard's proposed overall offer to every shareholder of Schenley common stock was better than the offer to be made by Glen Alden to the other Schenley shareholders, and despite the fact that other corporations were ready and willing to make better overall offers to Schenley common stockholders.

Contemporaneously with Glen Alden's purchase of Rosenstiel's shares, it was publicly announced through various financial and news media that a tender offer by Glen Alden would be made to Schenley shareholders which would be equivalent to the $80 per share paid to Rosenstiel. This offer was to consist of $20 in cash, a six percent twenty-year subordinated debenture in the principal amount of $60, and three warrants to purchase Glen Alden's common stock at $15 per share for each share of Schenley common stock.

Plaintiff concluded that the value of this proposed offer had been misrepresented in that it was not equal to the sum paid to Rosenstiel for the shares controlled by him. He filed a class action in the District Court of Delaware on behalf of all Schenley common shareholders at the time of the alleged transaction except for those involved in it, and also filed a suit in the Delaware Court of Chancery. These actions charged defendants with violating § 10(b) of the 1934 Securities Exchange Act and Rule 10b–5, and with a breach of fiduciary

duties.[2] The principal charges in the suit filed in the Delaware District Court were:

(1) Defendants' representations that the originally announced offer was equal or comparable to the $80 per share paid Rosenstiel were materially false and misleading; and

(2) Defendants' representations omitted the material fact that plaintiff and each member of his class had been deprived of the opportunity to effect a more favorable disposition of their shares to Lorillard or to other corporations.

Plaintiff further alleged that as a result of this legal action and the efforts of his counsel, Glen Alden publicly announced in April, 1968, it would increase its offer. The new offer included $10 in cash and a six percent twenty-year subordinated debenture in the principal amount of $100. Although this represented a $17 increase over the original offer, plaintiff contended it was still not equal to the $80 per share paid to Rosenstiel and filed an amended complaint. In August, 1968, the offer was raised to include $13 in cash and a six percent sinking fund, twenty-year subordinated debenture in the principal amount of $100 for each 1.5 shares of Schenley common stock,[3]—admittedly, three dollars more than the previous offer. The package included in the second revision was comparable to the $80 paid to Rosenstiel and to the offer made by Lorillard. Because defendant, Glen Alden, made these offers directly to the individual stockholders, plaintiff alleges that Glen Alden violated the provision of Rule 23(e) of the Federal Rules of Civil

Procedure providing for formal class settlements. Plaintiff also alleges that through his efforts a fund of approximately $83,000,000 was created for the benefit of the class he represented. This sum is the difference between the value of the original offer and the final tender offer.[4]

On February 20, 1969, plaintiff filed a petition for counsel fees, costs and expenses. The defendants promptly moved to dismiss both the complaint and the petition. Hearing was held on April 25, 1969, and on June 10th, Chief Judge Wright filed an opinion in support of his order dismissing plaintiff's petition. An order dismissing the complaint as moot was entered on July 8, 1969. Plaintiff then appealed the dismissal of his petition.

Counsel fees and expenses incurred in litigation are not ordinarily recoverable in the absence of a statute or contract authorizing them. Fleischmann Distilling Corp. v. Maier Brewing Company, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). There is, however, a well established exception in situations where a party has by his own effort and expense created or preserved a fund which benefits others. Mills v. Electric Auto-Lite Company, 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (January 20, 1970); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881); 6J Moore Federal Practice ¶ 54.77 [2] (2d ed. 1966). In such circumstances, it would be unjust to require one party to bear the entire expense which necessarily results in a benefit to

2. Plaintiff also sued in the United States District Court for the Southern District of New York, and the New York Supreme Court. In addition to the four actions commenced by this plaintiff, five largely similar actions, all allegedly class actions, were commenced by other plaintiffs in three different courts.

3. The final revised tender offer was made subsequent to a three for two stock split of the Schenley stock.

4. According to the pleadings, this is computed by multiplying the 4,150,000 shares of Schenley stock not controlled by Rosenstiel, prior to the stock split, by $20. The exact number of Schenley shares not controlled by Rosenstiel prior to the stock split was 4,180,874.

a large class of persons. Although the type of cases contemplated under this doctrine are ordinarily class actions or shareholders' derivative suits establishing a fund in which others can participate, such actions are not essential for recovery if "a fund is for all practical purposes created for the benefit of others." Sprague v. Ticonic National Bank, 307 U.S. at 165, 59 S.Ct. at 780.

In Mills v. Electric Auto-Lite Company, *supra,* decided on January 20, 1970, the Supreme Court agreed with the decision of the Second Circuit in Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300 (2d Cir. 1943) cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943) that attorney's fees could be awarded in private suits brought to enforce the Securities Exchange Act.[5] Justice Harlan writing the opinion of the Court said that he could not "infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies" including attorney's fees. 396 U.S. at 391, 90 S. Ct. at 625.

*Mills* was a suit brought by minority shareholders, both derivatively on behalf of the corporation and as representatives of the class of minority shareholders, to set aside a merger. The plaintiffs alleged that a proxy statement sent to the shareholders by the Auto Lite management to solicit votes in favor of a merger with Mergenthaler Linotype Company was misleading and in violation of § 14(a) of the Securities Exchange Act and Rule 14a–9 thereunder. The Court held *inter alia* that the officers of Auto Lite violated § 14(a) by issuing proxy solicitations which failed to disclose that the directors of Auto Lite who recommended approval of the merger were "under the control and domination" of Mergenthaler. Since the nondisclosed information was material

to the shareholders, there was a violation of 14(a) even if the terms of the merger were fair. The Court said that the question of fairness was relevant to the relief plaintiffs could obtain on remand, but that the determination of fairness alone could not negate a finding of liability.

In Part IV of his opinion, Justice Harlan discussed the question of awarding counsel fees to the plaintiffs. He stated that "petitioners, who have established a violation of the securities laws by their corporation and its officials, should be reimbursed by the corporation or its survivor for the costs of establishing the violation." 396 U.S. at 389, 90 S.Ct. at 624. In the *Mills* opinion, Justice Harlan noted that the plaintiffs' suit conferred a benefit on all the shareholders although the ultimate question of relief was not yet decided. "[R]egardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." 396 U.S. at 396, 90 S.Ct. at 628. (footnotes omitted).

In *Mills,* the Supreme Court clearly extended the circumstances in which the award of attorney's fees is appropriate to situations where the "suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid". The Supreme Court stated that the award of attorney's fees is not limited to circumstances in which there is a monetary fund from which fees may be paid, but extends to any situation in which the litigation "has conferred a substantial benefit on the members of an ascertainable class." 396 U.S. at 393–394, 90 S.Ct. at 626. The rationale of the Court's decision, which held the corporation responsible for the attorney's fees, was that all those who

5. The Second Circuit recognized the importance of counsel fee awards to private enforcement of the securities laws when Judge Clark said in Smolowe v. Delendo Corp.: "Since in many cases * * * the possibility of recovering attorney's

fees will provide the sole stimulus for the enforcement of § 16(b), the allowance must not be too niggardly." 136 F.2d at 241. *See also* Globus Inc. v. Jaroff, 279 F.Supp. 807 (S.D.N.Y.1968).

benefit from the litigation should share the costs proportionally.

█ In order to recover attorney's fees, it is not necessary that suit be brought to successful completion, since such a requirement might discourage prompt settlements.[6] Levine v. Bradlee, 378 F.2d 620, 623 (3d Cir. 1967); Gilson v. Chock Full O'Nuts Corporation, 331 F.2d 107 (2d Cir. 1964) (*en banc*); Schechtman v. Wolfson, 244 F.2d 537, 540 (2d Cir. 1957); Globus v. Jaroff, 279 F.Supp. 807 (S.D.N.Y.1968). Indeed, in *Mills* attorney's fees were awarded to the plaintiffs although it was not yet determined what relief if any plaintiffs could obtain.

█ It is necessary to determine, however, that where a suit is filed it is "meritorious" and that it is the plaintiff's effort which caused others to benefit. Levine v. Bradlee; Globus v. Jaroff; Chrysler Corporation v. Dann, 43 Del.Ch. 252, 223 A.2d 384 (1966). In several cases which became moot, courts have said suits were "meritorious" if they could have survived a motion to dismiss. *See e. g.,* Chrysler Corporation v. Dann;[7] Rosenthal v. Burry Biscuit Corporation, 42 Del.Ch. 279, 209 A.2d 459 (1949).

█ In the cases previously cited, including Mills v. Electric Auto-Lite Company, plaintiffs were awarded counsel fees from the fund created or from the class which benefited from their action. In the present case plaintiff seeks the highly unusual relief of having counsel fees paid by an adverse party. In derivative suits when a plaintiff sues corporate officers for breach of their fiduciary duties, the corporation which benefits from the suit—not the directors charged with mismanagement—is directed to pay. *See* Jones v. Uris Sales Corp., 373 F.2d 644 (2d Cir. 1967); *c. f.* Ballwanz v. Jarka Corp., 382 F.2d 433, 435 (4th Cir. 1967). In *Mills,* fees were awarded from the corporation in which the plaintiff was a shareholder. "To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action," stated Justice Harlan, "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. 396, 90 S.Ct. 628. In exceptional circumstances, however, where the behavior of a litigant has reflected a willful and persistent "defiance of the law", a court of equity has the power to charge an adverse party with plaintiff's counsel fees as well as court costs. *See e. g.* Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Hill v. Franklin County Board of Education, 390 F.2d 583, 585 (6th Cir. 1968); Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494, 500 (4th Cir. 1963) (*en banc*); Rolax v. Atlantic Coastline Railroad Co., 186 F.2d 473, 481 (4th Cir. 1951). Such awards, however, are clearly reserved for excep-

6. In Mills, the Court was asked to decide whether plaintiffs could be reimbursed for future expenses in seeking relief, but did not decide that issue saying:
 * * * "We are urged to hold that such expenses should be reimbursed regardless of whether petitioners are ultimately successful in obtaining significant relief. However, the question of reimbursement for future expenses should be resolved in the first instance by the lower courts after the issue of relief has been litigated and a record has been established concerning the need for a further award. We express no view on the matter at this juncture." 396 U.S. at 390, 90 S.Ct. at 624 n. 13.

7. Recovery of attorneys' fees has been allowed in the Second Circuit even when suit was not commenced. In Blau v. Rayette-Faberge, Inc., 389 F.2d 469 (2d Cir. 1968), the plaintiff shareholder hired a lawyer to investigate a violation of § 16(b) of the Securities Exchange Act. As a result of plaintiff's actions, but without suit, the corporation recovered from its officers. The court cited with approval Dottenheim v. Emerson Electric Mfg. Co., 7 F.R.D. 195 (E.D.N.Y. 1947), which said that to limit recovery of attorneys' fees to cases where suit is filed would be "penalizing efficiency and expediency". 7 F.R.D. at 197. *Cf.* Cherner v. Transitron Electronic Corp., 221 F.Supp. 55 (D.Mass.1963).

tional cases. *See* Rude v. Buchhalter, 286 U.S. 451, 459, 52 S.Ct. 605, 76 L.Ed. 1221 (1932); Local No. 149, International Union, United Automobile, Aircraft and Agricultural Implement Workers v. American Brake Shoe Co., 298 F. 2d 212 (4th Cir. 1962) cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276; McClure v. Borne Chemical Co., 292 F.2d 824, 835 (3d Cir. 1961); In re Swartz, 130 F.2d 229 (7th Cir. 1942); Guardian Trust Co. v. Kansas City Southern Railroad Co., 28 F.2d 233, 240 (8th Cir. 1928); 6J Moore, Federal Practice ¶ 54.77 [2] (2d ed. 1966).

In his brief, the plaintiff in the present case relies heavily on Taussig v. Wellington Fund, Inc., 187 F.Supp. 179 (D.Del.1960) aff'd, 313 F.2d 472 (3d Cir. 1963) cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963). *Taussig* was a declaratory judgment action filed by minority shareholders of Wellington Fund to determine the ownership of the name "Wellington". Wellington Fund, the nominal defendant in the derivative suit, was held to have the exclusive right to use the name; Wellington Company and Wellington Company, Ltd. were enjoined from using it. The District Court awarded plaintiffs attorney fees from Wellington Company and Wellington Company, Ltd. which stood the most to gain by misappropriating the "Wellington" name, stating that "[a]bsent a statutory provision, an equity court is not deprived of its inherent power to award attorney's fees to the prevailing party where the circumstances warrant", i. e. where the wrongdoers' actions "were unconscionable, fraudulent, willful, in bad faith, vexatious or exceptional." 187 F.Supp. at 222–223. In *Taussig*, the Court found as a fact "exceptional circumstances" to warrant the imposition of attorney's fees against the defendants.

In order to place himself within the scope of these cases, plaintiff here points to defendants' conduct in settling the suit without consulting plaintiff, his counsel or the court, and thus in plaintiff's words, "brazenly ignoring Rule 23(e)." If a court ultimately decides that a plaintiff created substantial benefit for others, it could find it inequitable to deprive plaintiff of counsel fees, merely because defendants prevented the physical creation of the fund by flagrantly ignoring Rule 23.[8] In order to recover from defendants on this theory, plaintiff must show *inter alia* that he instituted a valid class action such as would bring Rule 23(e) into play, and that the defendants or certain defendants ignored the Rule. On the basis of the allegations in the petition and in the complaint there is no indication that any defendant other than Glen Alden, which made the tender offer, and possibly Riklis, Glen Alden's president, prevented the creation of the fund from which plaintiff might be entitled to counsel fees.

Defendants contend and the trial court found that plaintiff did not represent a proper class under Rule 23. Plaintiff attacks this point in two ways: first, he argues that he did in fact represent a proper class; second, he contends that the plaintiff's suit should have been treated by defendants and the court as a proper class action until a final determination to the contrary was made.

The factual allegations in plaintiff's complaint would appear to be sufficient to state a class action at this stage of the proceedings. Plaintiff alleged he represented all the shareholders of Schenley's common stock at the time of the transaction in question, except, of course, for the Rosenstiel interest. Class actions have been held to be a proper and appropriate means of enforcing Sec-

8. Plaintiff also argued that he had an attorney's lien on the fund which the defendants could not defeat by giving the money directly to the shareholders. He cites state decisions on this point. Plaintiff's suit was filed pursuant to a federal statute and must be governed by the federal cases awarding counsel fees. 6J

Moore's Federal Practice ¶ 54.[77]. It should be noted that if plaintiff believed he was entitled to a lien on the amount that Glen Alden paid to the shareholders for their stock, he could have sought an injunction to enjoin the payment and to assert his claim against it in court.

tion 10(b) of the Securities Exchange Act. Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968) cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964). Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7th Cir. 1969). *See also* Comment, 116 U. Pa.L.Rev. 889 (1968).

■ The defendants contend that this was not a class action because plaintiff did not sell his stock and cannot therefore represent those shareholders who did. In Mills v. Electric Auto-Lite Company, the plaintiff who did not submit his proxy represented all the minority shareholders including those who did vote for the merger. 396 U.S. at 388, 90 S.Ct. at 623 n. 11. *See also*, Swanson v. American Consumer Industries, Inc., 415 F.2d at 1333. Defendants also state that the class consisting of all Schenley stockholders does not include those who sold their stock pursuant to the tender offer. Plaintiff, however, claimed to represent *all* persons who owned Schenley common stock at the time Glen Alden acquired Rosenstiel's interest, not merely those who presently own Schenley common stock or those who owned it when the petition was filed. The same alleged misrepresentations and nondisclosure by the defendants were addressed to this entire group. The position of the lower court that this was not a proper class because one must be a purchaser or seller to bring a § 10(b) suit is not consistent with the remaining parts of this opinion. The determination whether there is a proper class does not depend on the existence of a cause of action. A suit *may* be a proper class

action, conforming to Rule 23, and still be dismissed for failure to state a cause of action. As the 10th Circuit said in Esplin v. Hirschi, *supra,* since the effectiveness of the securities laws may depend in large measure on the application of the class action device "the interests of justice require that in a doubtful case, such as was presented here when considered by the trial court, any error, if there is to be one, should be committed in favor of allowing the class action." 402 F.2d at 101.

■ In the present case, it is also appropriate to follow the view taken by a number of district courts, and acknowledged by Chief Judge Wright in a ruling in Rogasner v. American-Hawaiian Steamship, Civil Action No. 3707 (D.Del. Aug. 1, 1969), that a suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination that the class action is not proper. Gaddis v. Wyman, 304 F.Supp. 713, 715 (S.D.N.Y.1969); Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324 (E.D.Pa.1967).

By this decision we do not indicate whether Glen Alden's revised tender offers were in fact settlement offers made in response to plaintiff's suit so as to make Rule 23(e) applicable. The causal connection between plaintiff's suit and defendant's revised offer, if any, should be established at trial.

Chief Judge Wright's primary ground for dismissing plaintiff's petition was that the underlying 10(b) complaint was not "meritorious" in that it could not have withstood a motion to dismiss.[9]

Section 10(b) of the Securities Exchange Act of 1934 states:

"To use or employ, in connection with the purchase or sale of any security registered on a national securities

9. The Securities Exchange Act of 1934 does not specifically provide for private enforcement. Although the Supreme Court has never ruled on the question of private actions under § 10(b), the use of such actions may be implied from J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct.

1555, 12 L.Ed.2d 423 (1964), holding that there is a private right of action for enforcement of § 14a. *See also,* Mills v. Electric Auto-Lite Company, *supra;* SEC v. National Securities, Inc., 393 U. S. 453, 467 n. 9, 89 S.Ct. 564, 21 L.Ed. 2d 668 (1969).

exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 states:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

In Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the Supreme Court declared "that a complaint should not be dis-

missed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of this claim which would entitle him to relief." Chief Judge Wright decided that because plaintiff did not tender his shares or rely on the alleged misrepresentations, he did not state a claim under Section 10(b) of the Securities Exchange Act. Relying on Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), Chief Judge Wright's position was that an action under 10(b) could be maintained only by a purchaser or seller who had relied on the alleged misrepresentation or nondisclosure. In Birnbaum, the Second Circuit upheld the dismissal of a suit under Section 10(b) and Rule X–10B–5 brought by minority shareholders of a corporation who had not sold their stock pursuant to a tender offer. After reviewing the legislative history of Section 10(b) the Court stated that the rule "extended protection only to the defrauded purchaser or seller." 193 F.2d at 464. The words "in connection with the purchase or sale" were thus given a narrow meaning. Because Birnbaum was cited numerous times for the proposition that only a defrauded purchaser or seller could bring a civil action under Section 10(b), and because many courts began to question its vitality, and to distinguish it,[10] the Second Circuit specifi-

**10.** The purchaser-seller requirement was liberalized by courts holding that plaintiffs who did not actually sell stock were "forced sellers", (because of a statutory merger of the company in which they held stock.) Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); or "aborted seller's", Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del.1965); M. L. Lee & Company v. American Cardboard & Packaging Corporation, 36 F.R.D. 27 (E.D. Pa.1964). In Stockwell v. Reynolds & Company, 252 F.Supp. 215 (S.D.N.Y. 1965), the court held that suit under Section 10(b) could be brought by one who was induced by misrepresentations to keep his shares and later sold them at a loss. But cf. Coffee v. Permian Corp.,

306 F.Supp. 1371 (N.D.Tex., Nov. 26, 1969). An exchange of shares in connection with a merger or sale of assets has been held to be "in connection with a purchase or sale." SEC v. National Securities, Inc., 393 U.S. 453, 467–468, 89 S.Ct. 564, 573, 21 L.Ed.2d 668 (1969); Swanson v. American Consumer Industries, Inc., 415 F.2d at 1330; Dasho v. Susquehanna Corp., 380 F.2d 262, 269 (7th Cir. 1967) cert. denied, sub nom. Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967). See also, Lowenfels, The Demise of the Birnbaum Doctrine: A New Era For Rule 10b–5, 54 Va.L.Rev. 268 (1968) noted by the Supreme Court in 393 U.S. at 467 n. 9, 89 S.Ct. 564. In an amicus brief in Iroquois the SEC urged that the purchaser-seller rule be abandoned. This

cally reviewed *Birnbaum* in Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. Nov. 3, 1969). After doing so, the Court concluded there was "no reason to deviate from [the *Birnbaum*] rule in the present case." 417 F.2d at 965. In *Iroquois*, the plaintiff company was a tender offeror whose offer was successfully resisted by the target company. In both *Birnbaum* and *Iroquois*, however, the suits dismissed were damage suits. A question remained open whether injunctive relief could be obtained under Section 10(b) by one who was not a purchaser or seller and who did not rely on the misrepresentation or nondisclosed information. In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), the Second Circuit had held that plaintiffs who did not sell their stock in reliance on the misrepresentation of defendant could bring suit for an injunction under 10(b) although they had stated no cause of action for damages. Judge Feinberg, writing the opinion, stated that he did not "regard the fact that plaintiffs [had] not sold their stock as controlling on the claim for injunctive relief." 384 F.2d at 546. In the *Iroquois* decision, the Court noted Mutual Shares Corp. v. Genesco and indicated it was not inconsistent with *Birnbaum* in permitting plaintiffs to obtain injunctive relief and thus "to aid in the enforcement of the 1934 Act." [11] 417 F.2d at 968.

The Second Circuit considered this question more recently in Crane Co. v. Westinghouse Air Brake Company, 419 F.2d 787 (Dec. 10, 1969), which makes it clear that there is no longer a *per se* requirement that plaintiffs in a 10(b) suit be defrauded purchasers or sellers. In *Crane*, a unanimous panel, including Chief Judge Lumbard who had joined in the *Iroquois* decision, held that an action for injunctive relief could be brought by one who was not a purchaser or seller provided there was a causal connection between the alleged violation of 10b–5 and the injury suffered by the plaintiff. Judge Smith, who wrote the opinion in *Crane*, endorsed a broad interpretation of Rule 10b–5 so as to effectuate the policy of the Act.

"The purchase-sale requirement must be interpreted so that the broad design of the Exchange Act, to prevent inequitable and unfair practices on securities exchanges and over-the-counter markets, is not frustrated by the use of novel or atypical transactions. A. T. Brod & Co. v. Perlow, *supra*, 2 Cir., 375 F.2d 393 at 397. 'In determining who has standing to enforce duties created by statute, a court's quest must be for what will best accomplish the purposes of the legislature.' Electronic Speciality Co. v. International Controls Corp., 409 F.2d 937, 946 (2d Cir. 1969). The purpose of Congress in enacting sections 9(a) (2) and 19(b) was to protect the investing public from manipulation and deception by the use of devices which defrauded or misled investors in securities transactions." 419 F.2d 798.

Defendants in the present case interpret the *Crane* case as one involving a "forced seller" under Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.

Court previously declined to resolve whether subsequent cases undermined the *Birnbaum* rule. In Pappas v. Moss, 393 F.2d 865, 870 (3d Cir. 1968), this Court concluded that the plaintiffs in a derivative suit had standing under 10b–5 because the corporation on whose behalf they sued had sold its own stock to its director and outsiders at prices alleged to be so far below the fair value as to amount to fraud.

11. The *Iroquois* decision tried to reconcile all the previous Second Circuit cases on the question of standing to sue under 10(b). The opinion referred to Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968), and the language in *Greenstein* that *Birnbaum* was "still the rule at least insofar as actions for damages are concerned." 400 F.2d at 581. *See* Symington Wayne Corp. v. Dresser Industries, 383 F.2d 840, 842 (2d Cir. 1967), cited in *Crane* as saying that earlier cases "expressly left undecided the question whether one who is neither a purchaser nor a seller can attack a transaction under Rule 10b–5."

1967. *Crane* owned 32% of the stock of Westinghouse Air Brakes. When the Crane tender offer was defeated, Westinghouse Air Brake merged into American Standard, whereupon Crane sold all but 10,000 of its 740,311 shares of American Standard (which had been received in exchange for its Westinghouse shares) under threat of a divestiture action to be brought by American Standard under the antitrust laws. As indicated in the following paragraph, Judge Smith did not limit his opinion to the "forced seller" theory:

> "We find violation of both section 9(a) (2) and Rule 10b–5 and standing in Crane to raise the issue. The amendment to the Act adding section 14(e) (15 U.S.C. § 78n(e)) effective July 29, 1968, subsequent to the events here in question, should serve to resolve any doubts about standing in the tender offer cases, even where an offeror is not, as is Crane, in the position of a forced seller." 419 F.2d at 798.

It may be worth noting that it was not the ultimate sale of stock by Crane which caused its alleged damage. Crane claimed that the misrepresentation and manipulation by Westinghouse caused the shareholders of Westinghouse to reject Crane's tender offer, and it was this that injured Crane.

The *Crane* decision was relied on by the District Court for the Southern District of New York in Butler Aviation International, Inc. v. Comprehensive Designers, Inc., 307 F.Supp. 910 (S.D.N.Y. Dec. 24, 1969). The Court in *Butler* granted plaintiff's motion for a preliminary injunction enjoining defendant, Comprehensive Designers, Inc., from consummating an outstanding tender offer. *Butler* was the target corporation of the tender offer and it alleged violations of Rules 10b–5, 10b–6 and 13d–1 by the defendant. Judge Cannella stated: "[I]t is not required under Rule 10b–5 that plaintiff be a buyer or seller of stock as those terms are normally understood. The phrase 'in connection with the purchase or sale of any security' was intended by Congress to mean only 'that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities. [SEC v. Texas Gulf Sulfur Co., 401 F.2d 833 at 860 (2d Cir. 1968)] See Crane Co. v. Westinghouse Air Brake Co."

The Second Circuit affirmed the decision in *Butler*, but declined to pass on the question of standing under Rule 10b saying, "Inasmuch as we agree that standing exists under § 14(e), * * * we need not pass on standing under Rule 10b–5. But cf. General Time Corp. v. Talley Industries, Inc., 403 F.2d 159, 164 (2d Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 796–799 (2d Cir. Dec. 10, 1969)." Butler Aviation International, Inc. v. Comprehensive Designers, Inc., 425 F.2d 842, 843 n. 1 (2d Cir. Jan. 8, 1970).

In General Time Corp. v. Talley Industries, Inc., *supra*, referred to by the Second Circuit in *Butler*, Judge Friendly said: "[W]e would not wish to place our approval on a holding that under no circumstances can an issuer have standing to seek an injunction. There are many practical advantages, well summarized in a note, Private Enforcement under Rule 10b–5: An Injunction for the Corporate Issuer? 115 U.Pa.L.Rev. 617, 628–29 (1967), in allowing a corporation in certain cases to enjoin manipulation of its stock. * * * While we leave that point open, it may be useful to say that we do not consider Birnbaum v. Newport Steel Corp. * * * to have ruled out such a suit despite phrases which, if taken out of context, might seem to support such a view." 403 F.2d at 164.[12]

---

12. *See also*, Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937 (2d Cir. 1969); and Moore v. Greatamerica Corp., 274 F.Supp. 490 (N. D.Ohio 1964), holding that the target corporation of a tender offer has standing to sue for injunctive relief against defendants' violations of 10(b).

The reference to the *Talley* and *Crane* cases by Judge Friendly in *Butler Aviation* indicates that the *Iroquois* decision does not limit standing for injunctive relief to purchasers or sellers.

The present case represents the first time this Circuit has addressed itself to the question whether Section 10(b) may be enforced by a private party who is neither a purchaser nor seller. The Circuits which have decided the issue are divided. The Seventh and Eighth Circuits require that plaintiffs be purchasers or sellers even where injunctive relief is sought. Greater Iowa Corporation v. McLendon, 378 F.2d 783 (8th Cir. 1967) (following *Birnbaum*); Jachimiec v. Schenley Industries, Inc., No. 15024 (7th Cir. 1965) cert. denied, 382 U.S. 841, 86 S.Ct. 46, 15 L.Ed.2d 82 (1965). The Second Circuit has construed the statute more broadly at least where an injunction is sought. The Sixth Circuit has also indicated that in a suit for injunctive relief the requirements may be liberalized. In Britt v. Cyril Bath Co., 417 F.2d 433, 436 (6th Cir. 1969), that court stated that in a suit under § 10(b), the necessary causal connection between the fraud alleged and the resultant purchase or sale of a security might be relaxed.

A broad view of the requirements for stating a claim for injunctive relief is particularly appropriate. In SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 at 193, 84 S.Ct. 275 at 283, 11 L.Ed.2d 237 (1963), the Supreme Court said, "It is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages." [13]

 Neither the language of § 10(b) and Rule 10b–5 nor the policy they were designed to effectuate mandate adherence to a strict purchaser-seller requirement so as to preclude suits for relief if a plaintiff can establish a causal connection between the violations alleged and plaintiff's loss. We agree with the Second Circuit in *Crane* that a strict interpretation of the Securities Exchange Act is not warranted under the circumstances present here. The Act was designed to eliminate deceptive and unfair practices in security trading and to protect the public from inaccurate, incomplete and misleading information. The thrust of the Act and the decisions interpreting it is to give the investing public the opportunity to make knowing and intelligent decisions regarding the purchase or sale of securities. A suit which seeks to enjoin deceptive practices which if continued would lead to completed purchases or sales that give rise to a cause of action under § 10(b) is not inconsistent with this policy and will in fact promote free and open public securities markets.

 The District Court found plaintiff's pleadings deficient in that they failed to allege reliance on the defendants' misrepresentations. Proof of reliance is not an independent element which must be alleged to establish a cause of action. In the recent *Mills* case, the Supreme Court ruled that reliance on false or misleading proxy statements is not required in order to set forth a cause of action under § 14(a) of the Securities Exchange Act. Judge Harlan stated:

"Where the misstatement or omission in a proxy statement has been shown to be 'material,' as it was found to be here, that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. This requirement that the defect have a significant propensity to affect the voting process is found in the express terms of Rule 14a–9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated

13. In Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) the Supreme Court also said that the Security Exchange Act is remedial legislation and as such should be construed broadly.

to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a)." 396 U.S. at 384, 90 S.Ct. at 621.

A further reason for the Supreme Court's decision was that "Proof of actual reliance by thousands of individuals would * * * not be feasible * * * and reliance on the *nondisclosure* of a fact is a particularly difficult matter to define or prove * * *." 396 U.S. at 382, 90 S.Ct. at 620 n. 5.

Since Rule 10b–5 also prohibits only misrepresentations which are "material", the reasoning of the Supreme Court in *Mills* applies with equal force to suits brought for violation of that Rule. This is in accord with the view of the Second and Sixth Circuits in Crane Co. v. Westinghouse Air Brake Co., 419 F.2d at 797 and Britt v. Cyril Bath Co., 417 F.2d at 436.

▇▇▇ Defendants contend that even if a more liberal interpretation of the statute is appropriate for injunctive relief the plaintiff here failed to request such relief and hence the complaint may not be so construed. Plaintiff's complaint does not specifically ask for equitable relief; it contains only the general request for "further relief as may be just." Nonetheless, under Rule 54(c) of the Federal Rules of Civil Procedure, a court may have awarded any relief appropriate under the circumstances. *See* United States for Use and Benefit of Bergen Point Iron Works v. Maryland Casualty Company, 384 F.2d 303, 304 (2d Cir. 1967); Arley v. United Pacific

Insurance Company, 379 F.2d 183, 187 (9th Cir. 1969); Whittaker v. Wall, 226 F.2d 868, 872 (8th Cir. 1955); Fanchon & Marco, Inc. v. Paramount Pictures Inc., 202 F.2d 731, 734, 36 A.L.R.2d 1336 (2d Cir. 1953).[14] Plaintiff's 10(b) suit would not have been dismissed even though the complaint did not request injunctive relief, if a cause of action for injunctive relief were in fact inherent in the complaint.

Plaintiff has set forth sufficient allegations of misrepresentations, manipulations and nondisclosures of material facts "in connection with the sale or purchase of securities" so as to entitle him to the opportunity to prove a violation of the Act. If the allegations of the complaint are taken in the light strongest for the plaintiff, as we are obligated to do on a motion to dismiss, then it is conceivable that plaintiff's pleading has alleged such misconduct by the defendants. Of course, nothing in this opinion should be construed as suggesting what in fact actually did occur.

▇▇▇ In consideration of the foregoing, it is our view that plaintiff's pleadings state a cause of action which may be the basis for an award of counsel fees, and therefore the order dismissing his petition will be reversed. The case will be remanded to the district court where plaintiff has the burden of proving the allegations set forth in his complaint and petition.[15] If the trial judge is satisfied that plaintiff has discharged this burden, he will then have the discretion to award plaintiff counsel fees in such amount as he determines are appropriate under the circumstances of the case.[16]

14. In Asphaltic Enterprises, Inc. v. Baldwin-Lima-Hamilton Corp., 39 F.R.D. 574, 576 (E.D.Pa.1966), Judge John Lord stated that "it is well established that the prayer for relief does not determine whether the plaintiff has stated a cause of action."

15. Certain defendants contend that plaintiff has no cause of action against them because jurisdiction over them was obtained by sequestration which is limited, under Wightman v. San Francisco Bay

Toll-Bridge Co., 16 Del.Ch. 200, 142 A. 783 (1928), to cases where a money decree is sought. Plaintiff, however, claims that defendants waived their right to contest jurisdiction. The trial court has not passed on this point, and will have an opportunity to do so on remand.

16. Plaintiff's petition for counsel fees requests 10% of the $83,000,000 fund which he contends he created. The District Court is, of course, not bound to award this amount, but instead must determine

Present HASTIE, Chief Judge, and McLAUGHLIN, FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS, and GIBBONS, Circuit Judges.

OPINION SUR PETITION FOR

REHEARING

PER CURIAM.

 In the Petition for Rehearing, defendants other than Glen Alden and Riklis ask that the 1969 District Court order be affirmed as to them in view of the statements in the first full paragraph on page 168. We believe that it is a more orderly procedure for the District Court to consider such a contention.

the actual benefit which plaintiff created for the other Schenley shareholders. Furthermore, the sum for which plaintiff is entitled to reimbursement does not hinge solely on the benefit plaintiff is successful in recovering. *See*, Mills v. Electric Auto-Lite Company *supra;* Angoff v.

Goldfine, 270 F.2d 185, 188–189 (1st Cir. 1959) ; Powell v. Pennsylvania Railroad Co., 267 F.2d 241, 245 (3d Cir. 1959). The District Court should also consider the amount of time and effort expended by the plaintiff.