NORTHWESTERN FRUIT CO., Malat Produce Co., Inc., and Twin City Produce Supplies, Inc., Plaintiffs,

v.

A. LEVY & J. ZENTNER CO., Abatti Produce, Inc., A & M Produce Co., A.T.B. Packing Co., Badlands Provisions, Inc., Bud Antle, Inc., Couture Farms, Hi-Value Processors, Inc., Lindemann Farms, Inc., Mario Saikhon, Inc., Naam Packing Co., Pacific Farm Co., Pappas and Co., Perez Packing, Inc., Sahara Packing Co., Signal Produce, Inc., Silver Creek Packing Co., Stamoules Produce Co., Tri-Produce Co., United Packing Co., V.H. Azhderian & Co., Inc., Defendants.

No. CV F–84–263–EDP.

United States District Court,
E.D. California.

March 24, 1986.

See also, 665 F.Supp. 869.

John M. Anderson, Jon Enscoe, Ann Julius, Landels, Ripley & Diamond, San Francisco, Cal., Arthur M. Kaplan, Allen D. Black, Edward B. Rock, Fine, Kaplan & Black, Philadelphia, Pa., Vance K. Opperman, Charles N. Nauen, Opperman & Paquin, Andrew C. McIntosh, K. Craig Wildfang, Wildfang, Rude, McIntosh, Murray & Chartered, Minneapolis, Minn., Mary Louise Frampton, Frampton, Karshmer & Kessellman, Fresno, Cal., for Northwestern Fruit Co., Malat Produce Co., Inc., Twin City Produce Supplies, Inc.

Richard J. Archer, Kristina M. Hanson, Archer & Hanson, San Francisco, Cal., for A. Levy & J. Zentner Co.

Patrick J. Sullivan, Sullivan, Duvall & Noya, San Diego, Cal., for Associated for Abatti Produce.

John Germino, Stephen G. Opperwall, Germino, Layne, Brodie, Runte, Maquire & Mac Kay, Palo Alto, Cal., for V.H. Azhderian & Co., Inc.

John J. Maloff, Horton, Knox, Carter & Foote, El Centro, Cal., for Badlands Provisions, Inc., Signal Produce, Inc.

Michael St. Peter, Lukens, St. Peter & Cooper, San Francisco, Cal., for Bud Antle, Inc.

Lyman Griswold, Griswold, Bissig, LaSalle, Cobb & Dowd, Hanford, Cal., Randy Lebedoff, John French, Faegre & Benson, Minneapolis, Minn., for Couture Farms.

Merrick J. Bobb, Raymond C. Fisher, Tuttle & Taylor, Los Angeles, Cal., for Hi-Value Processors, Inc.

Robert E. Gooding, Jr., H. Joseph Escher, III, Howard, Rice, Nemerovski Canady, Robertson & Falk, San Francisco, Cal., for A.T.B. Packing Co.

Richard A. Clark, Susan Harrison, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, Cal., for Lindemann Farms, Inc.

Ravinder Samra, Lowell Sutherland, Sutherland & Gerber, El Centro, Cal., for Mario Saikhon, Inc., A & M Produce Co.

Ann L. Kelly, Merced, Cal., Eugene Garfinkle, Dreher, Garfinkle & Watson, San Francisco, Cal., for Naam Packing Co.

William S. Boyd, John E. Schulz, Brobeck, Phleger & Harrison, San Francisco, Cal., John D. Chinello, Jr., Chinello, Chinello, Shelton and Auchard, Fresno, Cal., for Pacific Farm Co.

Paul T. Chambers, Crossland, Crossland, Chambers and Mac Arthur, Fresno, Cal., for Pappas & Co.

Robert D. Raven, Gordon P. Erspamer, Edward Quevedo, Morrison & Foerster, San Francisco, Cal., for Perez Packing Co., Couture Farms.

Richard F. Outcault, Jr., Richard L. Fruin, Jr., Lawler, Felix & Hall, Los Angeles, Cal., Patricia A. Stanley, Newport Beach, Cal., for Sahara Packing Co.

Eugene Crew, Joel Linzner, Khourie & Crew, San Francisco, Cal., for Silver Creek Packing Co.

Robert L. Jones, Jr., Richardson & Jones, Fresno, Cal., for Stamoules Produce Co.

Stephen V. Bomse, Matthew L. Larrabee, Harold Kahn, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Nickolas J. Dibiaso, Thomas, Snell, Jamison, Russell Williamson & Asperger, Fresno, Cal., for Tri-Produce Co.

Richard E. Salisch, Salisch & Salisch, Fresno, Cal., Ted R. Frame, Frame and Allen, Coalinga, Cal., for United Packing Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE CLASS CERTIFICATION

PRICE, District Judge.

### FINDINGS OF FACT

1. Plaintiffs have satisfied the requirement of Fed.R.Civ.P. 23(a)(1) (numerosity), 23(a)(2) (existence of common questions), and 23(a)(4) (adequacy of representation), as well as Fed.R.Civ.P. 23(b)(2) (injunctive relief). Of the four provisions of Fed.R.Civ.P. 23(a), defendants only contest satisfaction of 23(a)(3) (typicality of claim). Defendants also contest satisfaction of Fed.R.Civ.P. 23(b)(3) (predominance of common questions and superiority of class certification to other alternatives).

2. Defendants impose a cooling and palletizing charge when they sell cantaloupes to purchasers, and in the vast majority of sales the cooling and palletizing charge is separately stated, as well as arithmetically included in the "bottom line" paid by the cantaloupe purchaser.

3. The standard cooling and palletizing charge imposed by defendants was $.75 per carton in 1980; in the summer and fall of 1981 the standard cooling and palletizing charge was $.80 per carton; and in 1982 and 1983 the standard cooling and palletizing charge was $.80 per carton.

4. In all but rare instances, the standard cooling and palletizing charge was paid by cantaloupe purchasers.

5. Large purchasers, as well as smaller purchasers, paid the same standard charge to defendants.

6. Although defendants took various depositions, defendants did not introduce any testimony or declarations from class members stating that they consider the class representatives atypical or that they oppose class certification. To the contrary, three large class members, including Safeway Stores and Lucky Stores, filed declarations supporting class certification.

7. There is evidence that the same standard charge was imposed in virtually all types of transactions, including F.O.B. sales, delivered sales, and consignment sales.

8. Defendants introduced no expert testimony from any economists to support their argument that differences in the way that purchasers buy are relevant to class

determination issues. On the contrary, plaintiffs' experts have stated that differences in the way purchasers buy are irrelevant if purchasers paid the same standard charge.

9. The Court finds that plaintiffs have adequately demonstrated that impact and the measure of damages may be determined from economic evidence common to the class.

10. On occasion, cantaloupes are sold without being cooled and palletized, and on those occasions no cooling and palletizing charge is paid. However, those transactions are not included within the proposed class, as defined, because the class is limited by definition to direct purchasers of cantaloupes who "paid the cooling and Palletizing charges imposed by defendants."

11. There are numerous questions of law or fact common to the class. The common questions of law or fact include the following broad issues, each of which encompasses many subsidiary issues of law or fact also common to the class:

(i) Whether the defendants conspired to fix the charges for the cooling and palletizing of cantaloupes;

(ii) Whether each defendant participated in the conspiracy;

(iii) Whether as a result of defendants' conduct, the charges for the cooling and palletizing of cantaloupes exceeded the cost-based charges that would have resulted from competition, and if so by what measure;

(iv) Whether the defendants' actions violated the Sherman Act; and

(v) Whether defendants' conspiracy has continued and should be enjoined.

In the absence of class certification, any individual plaintiff who sought to recover against the defendants would have to establish these same facts, using the same evidence, and overcoming the same defenses. For example, each individual plaintiff would have to prove the same conspiracy, and would necessarily resort to the same evidence to do so.

12. Plaintiffs' experts have stated that impact (i.e., the fact of some damage caused by the conspiracy) and measure of damages can be and would be determined on the basis common to the class. Defendants introduced no economic testimony to the contrary. Accordingly, the only economic testimony of record supports plaintiffs' conclusion that impact and the measure of damages can be and would be proved on a basis common to the class.

13. Defendants' pending summary judgment motions likewise raise predominantly common questions of law and fact. Defendants' motion for summary judgment makes three principal arguments.

First, defendants argue that plaintiffs cannot recover for the price fixing of cooling and palletizing charges they pay, because (a) cooling and palletizing and a carton of cantaloupes are a single product; and (b) one cannot recover for price fixing a component of a single product. This ground involves a question of fact common to the class (that is, is a single product involved). It also raises an even more important question of law common to the class (that is, is the "single product" distinction a legally relevant defense). Plaintiffs' reply—that the price fixing of any charge whatsoever is actionable—is common to every class member.

Defendants' second joint argument for summary judgment is the economic theory that if one component charge, here the cooling and palletizing charge, is raised, other components will necessarily come down by exactly the same amount.

Defendants' final joint summary judgment argument is that growers, rather than purchasers, have standing. That argument also is common to the class certification motion. As noted by defendants all members of the purchaser class are similarly situated vis-a-vis defendants' argument that growers have standing to the exclusion of purchasers.

14. That economic evidence will be common to the class is illustrated by a concession in the Declaration of Roy Bethel In

Opposition to Plaintiffs' Motion for Class Certification. Mr. Bethel, on behalf of defendant A.T.B. Packing Co., admits that the "bottom-line" price of cantaloupes is lower (by the precise amount of the standard cooling and palletizing charge) when cooling and palletizing charges are not imposed:

> At the request of purchasers, however, the sales agent occasionally handles sales of cantaloupes that have not been cooled or palletized ... Such purchasers are charged $.80 less per carton for cantaloupes that have been neither cooled nor palletized....
>
> (Paragraph 5)

The foregoing admission would be of equal utility to all plaintiffs in disproving defendants' argument that changes in the cooling and palletizing charge do not affect the "bottom line" price. Like other economic evidence, its utility does not depend on the identity of the particular plaintiff.

15. Plaintiffs estimated that the class includes "several thousand" members. Defendants estimated that the class includes 5,000 to 10,000 class members. The parties therefore appear to agree that the class numbers no more than 10,000 members.

16. The proposed class is substantially smaller in size than several price fixing classes that have been certified and successfully managed. Plaintiffs point to *In re Gypsum Cases*, 386 F.Supp. 959, 965 (N.D.Cal.1974), *aff'd on other grounds*, 565 F.2d 1123 (9th Cir.1977) in the Northern District of California, where the reported record indicates that Judge Zirpoli certified classes including 470,000 members, and successfully managed the case through test case trials on liability and measure of damages, and through post-trial settlement and distribution. Plaintiffs also point to *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244, 247 (S.D. Tex.1978) and 643 F.2d 195, 206 (5th Cir.1981) where a class estimated to have 300,000 potential class members was, according to the reported record, managed successfully through trial on the issues of violation, impact and measure of damages. *See also*,

*In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)

17. Defendants have argued that this is an unusually complex industry. However, defendants introduced no expert economic testimony regarding the complexity of this industry relative to industries where class actions have been successfully managed and resolved. Because defendants introduced no expert economic testimony on this point, the only economic testimony of record supports plaintiffs in this regard.

18. In a separate Declaration of Professor Lawrence A. Sullivan In Support of Plaintiffs' Motion for Class Certification, Professor Sullivan states:

> In a number of price fixing cases, defendants have made predictions similar to those defendants made here, and the courts have nonetheless certified classes.... [T]o the best of my knowledge in those cases, the predicted endless mini-trials have never come to pass. Several such cases have been successfully tried on the issues of violation, impact and measure of damages without becoming unmanageable or breaking down into mini-trials.

> \*   \*   \*   \*   \*   \*

> In all of my experience, I have never heard of even one case in which an antitrust class action bogged down into a series of lengthy and time consuming mini-trials or otherwise bogged down in consequence of the complexity of the distribution chains or the variety of the transactions. Given the nature of my experience, and the steps I take to stay informed, I am confident that if such an event had occurred I would have heard about it. (Paragraphs 3 and 5).

19. Numerous price fixing class actions have been successfully managed through settlement or trial to final resolution. The defendants have not brought to the Court's attention any price fixing case where the predicated difficulties of management

proved to be other than speculative and conjectural.

## CONCLUSIONS OF LAW

A. The evidentiary standard for class certification is set forth by the Ninth Circuit in *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976):

> Defendants misconceive the showing required to establish a class.... [N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule. The district judge is required by Fed.R.Civ.P. 23(c)(1) to determine, as soon as practicable after the commencement of an action brought as a class action ... whether it is to be so maintained. The Court made clear in *Eisen IV* that the determination does not permit or require a preliminary inquiry into the merits, 417 U.S. at 177–178.... An extensive evidentiary showing of the sort requested by defendants is not required.

524 F.2d at 901

B. For purposes of the initial class determination, the Court is "bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack, supra,* 524 F.2d at 901, n. 17.

C. Pursuant to Fed.R.Civ.P. 23(c)(1), the initial class determination must be made "as soon as practicable", but "may be altered or amended before the decision on the merits" on a developing record. Likewise, if necessary on a developing record, "a class may be divided into subclasses", pursuant to Fed.R.Civ.P. 23(c)(4). E.g., *Sol S. Turnoff Drug Distributors, Inc. v. N.V. Nederlandsche Combinatie Voor Chemische Indrustie,* 51 F.R.D. 227, 233 (E.D. Pa.1970).

D. Plaintiffs have established plaintiffs' typicality of claim, since plaintiffs and all other class members must prove the same conspiracy and its effectuation by the defendants.

E. Fed.R.Civ.P. 23(b)(2) provides class certification where "the party opposing the class has acted ... on grounds generally applicable to the class, thereby making appropriate final injunctive relief...." The Second Amended Complaint alleges a continuing conspiracy, and expressly seeks injunctive relief as well as damages. Second Amended Complaint, Prayer for Relief, paragraph (d). The price fixing conspiracy, if proved, furnishes grounds for final injunctive relief and class certification pursuant to Rule 23(b)(2).

F. Horizontal price fixing class actions have been certified pursuant to Fed.R. Civ.P. 23(b)(3), and since the decision in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the approved classes have generally included all direct purchasers.

G. The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

H. The Court finds that a class action is superior to other available methods for the adjudication of this controversy in that any differences in the marketing of cooled cantaloupes would not appear to cause insuperable management problems.

This Court has broad discretionary powers to deal with administrative problems.

At oral argument, defendants referred to their right of rebuttal with regard to "causation" of damages. However, the Ninth Circuit has rejected this argument in *Blackie v. Barrack,* 524 F.2d 891, 907 at n. 22 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)

I. That brokers sometimes assist in the sale and purchase of cooled cantaloupes should not create any serious class management problems. The reported decisions show that broker-assisted transactions were included in the classes in, e.g., *In re Plywood Antitrust Litigation,* 76 F.R.D. 570, 587 (E.D.La.1976) and *In re*

*Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 334 and 343 (E.D.Pa.1976).

Pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499(a)(7), brokers ordinarily act as agents, negotiating sales or purchases on behalf of the seller or buyer, and are not ordinarily buyers or sellers themselves. Pursuant to regulations under the Act, brokers cannot deal on their own behalf, as buyers or sellers, without express disclosure to all parties in each such transaction. 7 C.F.R. § 46.28(d). In this regulatory context, and in the absence of evidence of actual difficulty in class actions where broker-assisted transactions were included, the Court cannot assume on the basis of speculation that brokers and their principals will necessarily file any significant, let alone unmanageable, number of inconsistent or duplicative claims.

J. Defendants have not established that the inclusion of delivered sales (sometimes setting forth only a "bottom-line" price) would create unmanageable difficulties, nor have defendants cited any decisions excluding delivered sales from a class on grounds of unmanageability or otherwise. The payment of the cooling and palletizing charge may be established from other documents, such as sales journals, at the claim stage of proceedings. See, *In re Plywood Antitrust Litigation,* 76 F.R.D. 570 (E.D. La.1976), where all delivered sales were included although the "customers" invoice for the plywood ... reflects only the final full delivered price...." 76 F.R.D. at 574.

K. The argument of unmanageability resulting from diverse marketing arrangements "is an argument, necessarily somewhat conjectural in nature, that has not gathered strength with reiteration." *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34, 38 (S.D.N.Y.1977), *appeal dismissed,* 574 F.2d 656 (2nd Cir. 1978), *see also, In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 253, (S.D.Tex.1978). As stated in *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 356–357 (E.D.Pa.1976), "Experience ... under Rule 23 shows that visions of unmanageability soon disappear...."

L. Multiple lawsuits in various state or federal courts or intervention by numerous separately represented parties would be costly and inefficient, and the exclusion of every class member that cannot afford separate representation would be neither "fair" nor an "adjudication" of their claims. E.g., *In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 252 (S.D.Tex.1978); *In re Glassine and Greaseproof Paper Antitrust Litigation,* 88 F.R.D. 302, 307 (E.D.Pa.1980); *Brown v. Cameron-Brown Company,* 92 F.R.D. 32, 49 (E.D.Va.1981). It is "in just such situations that representative treatment may be most needed, since separate suits by the many plaintiffs, or against the many defendants, would pose an intolerable burden on ... the judicial system, and denial of the class action might well mean a total denial of relief, as a practical matter, for the persons injured." *Manual for Complex Litigation,* § 1.43.

M. The inefficiency of requiring large class members to bring suit elsewhere or obtain separate representation was described in *State of Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484, 490 (N.D.Ill.1969) where the court initially had declined to certify a class:

The recent history of this litigation dramatically illustrates the impracticality of these alternatives [to class certification]. In 1966 there was a single suit purporting to be a class action. The entire litigation might have been concluded without further complexity. But defendants successfully opposed the class suit, with the result that lawsuits have blossomed throughout the country. Rather than the original handful of attorneys, lawyers are now so plentiful that the entire courtroom is filled at each pretrial conference. Section 1407 consolidation became mandatory. When returned for trial, the subsequently filed cases will consume substantial amounts of the transferor courts' time.

## CONCLUSION

For all of the foregoing reasons the Court certifies, pursuant to Fed.R.Civ.P. 23(b)(2) and (b)(3), a class defined as:

"All persons (excluding subsidiaries and commonly-owned affiliates of the defendants) who, within four years prior to the filing of the complaint, directly purchased cantaloupes marketed by any of the defendants and paid the cooling and palletizing charges imposed by the defendants."